**NOTTEBAUM et al. v. LECKIE et al. GANLEY et al. v. SAME. SAME v. JUDWILL CO., Inc., et al.**

Circuit Court of Appeals, Third Circuit.
February 28, 1929.

Nos. 3715–3717.

Robert Carey, Jr., George F. Seymour, Jr., and Harold M. Blanchard, all of Newark, N. J. (Isidor Unger, of New York City, of counsel), for appellants.

John M. Emery, of Newark, N. J., for appellees Leckie and another.

Edwards & Bryan and Duncan Edwards, all of New York City, for appellees Robb and others.

John W. Queen, of Jersey City, N. J., for appellee Judwill Co., Inc.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge. This interminable conflict and confusion is largely, if not solely, due to a proceeding, vitally important to the corporation and its stockholders, which was begun without notice or any opportunity to be heard. To this fundamental violation of the law and its resulting invasion of property rights may be attributed the wretched entanglement disclosed by the records in these appeals. A mere statement of the initial situation will bring the issue clearly into view.

Ralph Nottebaum came from his home in Germany to the United States in 1912, being the discoverer and inventor of various formulæ for compounds, and began the manufacture, in the city of Hoboken, N. J., of a metal polish under the name of "Noxon." The manufacture under his formulæ continued, except as interrupted by the war, until 1919, when the defendant corporation, the Noxon Chemical Products Company, Inc., was formed, with a capital stock of 5,750 shares, of the par value of $100 per share; 4,000 shares thereof being preferred. To this corporation Nottebaum granted an exclusive and perpetual license to use the formulæ and trade-name "Noxon," conditioned only on the solvency of the company and its continuance in business. In the arrangement between him and the company, he reserved to himself sufficient common stock to give him voting control.

About 1921, William J. Robb, Everett L. Judkins, and William Crawford became purchasers of common and preferred stock of the company in a large amount; they being officers and directors of a New York corporation known as the Judkins & McCormick Company, which they controlled; Robb being its treasurer. This company loaned to the Noxon Company various sums of money, the moneys received from stock subscriptions and loans being used in advancing the business of the company and in acquiring title to property for the site of its manufacturing plant, at No. 70 Morris avenue, Newark, N. J. During 1924 and thereafter the said Nottebaum, Robb, and Judkins were directors of the company; Nottebaum being president, and Robb treasurer.

On February 25, 1925, while the plant of the company was still in full operation, and on which day a special meeting of the stockholders and directors had been called to consider certain questions of policy, William J. Robb, who was treasurer of the company, but acting individually, appeared before Hon. William N. Runyon, United States District Judge for the District of New Jersey, at Newark, and filed a bill of complaint in equity against the Noxon Chemical Products Company, Inc., alleging, among other things, that the plant had ceased all operations, that there was no money available for carrying on the work of the plant, that the company was insolvent, and asking for the appointment of a receiver.

Although no notice of any kind of the filing of the bill was given to the company, or alleged to have been given, nor was any allegation made that immediate and irreparable loss or damage would result to the applicant before the matter could be heard on notice, nor were any specific facts shown by affidavit, or by the verified bill, which could legally dispense with such notice, the court, nevertheless, appointed Charles R. S. Leckie and Archie H. Ormond receivers of the said corporation until further order of the court, together with all the properties of the defendant of every description, real and personal; the defendant and all persons acting under it being directed to deliver to the receivers any and all of its properties in its possession or under its control on presentation of a certified copy of the decree. The receivers were further authorized to take complete control and possession of defendant's property wherever found, and manage and operate the business of the company, to make such payments as were necessary for the preservation of its properties and affairs, and to prosecute all manner of actions in law or in equity, being vested, in addition, with all the powers of receivers in cases of that kind, and to make report of their proceedings to the court.

The decree also contained an injunction in the broadest possible form, providing: "That all persons having, or claiming to have, any right or interest in any property of the defendant, be hereby enjoined from prosecuting any action at law or proceeding in equity against the defendant, or from executing or issuing any execution, writ, process, summons, attachment, subpœna, replevin, or any other proceeding for the purpose of impounding or taking possession of, or interfering with, any property owned by, or in the possession of, said defendant, or the said receivers; and all persons or parties or their representatives or agents, and all sheriffs, marshals and other officers, are hereby enjoined and restrained from removing or attempting to remove, or disposing of or interfering, in any way, with any property, assets or effects in the possession of said defendant or of said receivers, or owned by said defendant, or in the possession of any officer, agent, attorney or representative of said defendant, and from doing any act whatsoever to interfere with the possession or management by said receivers of the properties of the defendant, or in any way to interfere with the said receivers in the discharge of his duties, or to interfere in any way with the administration and disposition in this suit of the affairs and properties of the defendant."

The creditors and stockholders were further directed to show cause before the court on March 16, 1925, at the Chamber of Commerce Building, Newark, N. J., why said receivers should not be continued as receivers, with all the powers and duties therein conferred.

■ The defendant had no notice or knowledge of these proceedings until the receivers, armed with the court's decree, appeared on the premises, ousted the defendant therefrom, and took full possession of its property, assets, and business. It may be here stated that such proceedings were wholly unwarranted, if instituted under the general corporation law of the state of New Jersey. But in the courts of the United States, into whose jurisdiction the plaintiff came, and to whose powers he appealed, the proceedings were null and void from the beginning, depriving the defendant of its property without due process of law, in violation of the federal Constitution.

It would appear that the bill for the appointment of a receiver and the sale of defendant's property was brought under the provisions of the General Corporation Act of New Jersey (2 Comp. St. 1910, p. 1592). The bill is evidently drawn to meet the provisions of section 65 of that act, and the ultimate facts required by that section are recited by the court in its decree. If section 65 could be construed as permitting the appointment of a receiver without notice, that section is held to be unconstitutional by the Court of Errors and Appeals in Shaw v. Standard Piano Co., 87 N. J. Eq. 350, 100 A. 167. In that case the court very aptly said:

"It is obvious from a plain reading of the section referred to that it attempts to confer such power on the Court of Chancery, as was exercised in the present case, but it needs no argument to demonstrate that the exercise of such a power is in direct conflict with the constitutional inhibition against the taking of the property of another without due process of law.

"That the appointment of a receiver without affording the defendant an opportunity to be heard upon the application was a taking of its property without due process of law is manifest when it is considered that section 68 of the Corporation Act provides that all the real and personal property of an insolvent corporation wheresoever situated and all its franchises, rights, privileges and effects shall, upon the appointment of a receiver, forthwith vest in him, and that the corporation shall be divested of all title thereto.

"We therefore conclude that the provision in section 65 of the Corporation Act authorizing the appointment of a receiver without notice to the defendant corporation is unconstitutional."

By section 68 it is clear that the appointment of the receivers immediately divested the corporation of all title to its property. That section is in these words: "All the real and personal property of an insolvent corporation, wheresoever situated, and all its franchises, rights, privileges and effects shall, upon the appointment of a receiver, forthwith vest in him, and the corporation shall be divested of the title thereto."

■■ What, then, is the legal situation? On the presentation of the bill and affidavit, the court passed summarily on the case so presented, and finding the facts there asserted to be true, appointed receivers, which immediately and of itself, divested the defendant of all its property. This was a final decree. The New Jersey act does not recognize any distinction between so-called temporary and permanent receivers, nor does any such distinction appear in the decree. The receivers were appointed, as shown by the decree, until further order of the court. This is the situation as to all receivers. They are merely the arm of the court, and subject to the court's orders. In this final decree the proceeding

as a suit inter partes, was at an end. By the granting of an injunction a trust thereby arose, the corporation being enjoined from exercising its franchises, and what follows is the administration of that trust, under the direction of the court. This trust necessarily arose from the situation created, when the injunction disabled the corporation from exercising any of its franchises and taking care of its property. This principle is pointed out in Pierce v. Old Dominion Copper Mining & Smelting Co., 67 N. J. Eq. 399, 58 A. 319, affirmed by the Court of Errors and Appeals, 74 N. J. Eq. 450, 70 A. 1101.

The federal courts have not been less emphatic in their condemnation of proceedings instituted without notice to a party to defend. In Riverside & Dan River Cotton Mills v. Menefee, 237 U. S. at page 193, 35 S. Ct. 580 (59 L. Ed. 910) Mr. Chief Justice White said: "That to condemn without a hearing is repugnant to the due process clause of the Fourteenth Amendment needs nothing but statement." And at page 194 (35 S. Ct. 580): "And that a corporation no more than an individual is subject to be condemned without a hearing or may be subjected to judicial power in violation of the fundamental principles of due process as recognized in Pennoyer v. Neff [95 U. S. 714, 24 L. Ed. 565], is also established by the cases referred to and many others. * * * Whenever a provision of the Constitution is applicable the duty to enforce it is imperative and all-embracing and no act which it forbids may therefore be permitted." This is only a general statement of the well-settled principle of law. See cases cited in 12 Corpus Juris, 1234.

Condemnation without notice and an opportunity to be heard, which is so repugnant to our sense of justice, and so fundamentally violative of human rights, doubtless led Congress to the enactment of the Clayton Act (38 Stat. 730), which was directed specially against this wrong. Under the provisions of that act (28 USCA § 381), no *preliminary injunction* shall be granted in any case whatever, without notice to the opposite party. Nor shall any *temporary restraining order* be granted, without notice to the opposite party, unless it shall clearly appear, from specific facts shown by affidavit or by the verified bill, that immediate and irreparable loss or damage will result to the applicant before the matter can be heard on notice. No such facts or averments were made in the bill here, which could even justify a temporary restraining order. In case a temporary restraining order is granted without notice in the contingency specified, the act provides that the matter shall be made returnable at the earliest possible time, and in no event later than 10 days from the date of the order. When the matter comes up for hearing the party who obtained the temporary restraining order shall proceed with his application for a preliminary injunction, and, if he does not do so, the court will dissolve his temporary restraining order. If the plaintiff, on such hearing, should establish his right, by proper proof, to a preliminary injunction, the case will then, in due course, come on for final hearing, to determine whether a permanent injunction shall issue.

In the case at bar, the proceeding, being in fact under the general equity powers of the federal court, was squarely in the teeth of the Clayton Act, ignoring its every provision. If the Clayton Act must be followed where only damage to property, or property rights, is involved, how much more conspicuously mandatory are its provisions in a case involving the absolute seizing and taking of property from the possession of the owner, without notice, and hence without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.

We are not here considering the ultimate merits of the respective claims of the parties. That is, in fact, beside the question. We are dealing with the fundamental, the constitutional, right of notice and a hearing before condemnation. This primal right was not only here denied, but the plaintiff was granted, contemporaneously with the right of illegal seizure by the receivers, an injunction, permanent in its character, absolutely forbidding the defendant from exercising any of its corporate franchises. Not only was the granting of the injunction in plain defiance of the commands of the Clayton Act, but, beyond this, the plaintiff was relieved, by the court's decree, of the burden of proof which that act specifically placed upon it in every succeeding step. Even if such facts had been alleged and shown as justified the granting of a *temporary restraining order*, which were not, and the injunction issued could be treated merely as a temporary restraining order, which it could not, the burden of proof rested heavily upon the plaintiff. The vital matter of notice to the defendant being wanting, the plaintiff must proceed to an early hearing in his endeavor to obtain a *preliminary injunction*. During such hearing, no duty whatever rested on the defendant. It may neither answer nor offer proof. It may sit silent. The plaintiff, on whom rests the burden, must show to the court such facts

as will justify a preliminary injunction; otherwise, the application would be refused, and the temporary restraining order dismissed.

No such proceeding was pursued or attempted here. Instead, defendant's creditors and stockholders are notified to show cause "why the said receivers should not be continued as such receivers." In other words, although the plaintiff had violated the constitutional right of notice, the receivers had been illegally appointed, the defendant's property had been unlawfully seized and taken from it, and the exercise of its corporate franchises had been taken away by injunction, in spite of all this the court decreed that the stockholders and creditors of the corporation should show cause why the said receivers should not be continued as such receivers. The burden of proof was thus shifted from the plaintiff, where the law placed it, to the defendant, requiring the latter to undo that which was invalid from the beginning. It is perfectly clear that such a proceeding stands condemned under the sweeping statement of Chief Justice White that, "wherever a provision of the Constitution is applicable, the duty to enforce it is imperative and all-embracing, and no act which it forbids may therefore be permitted."

We stop to inquire, therefore, what subsequent act of the defendant has validated this unlawful procedure? What subsequent act of the defendant has breathed into the dead body the breath of life? By what legal alchemy has this trasmutation been wrought? Does some vain attempt to undo the wrong so couple it with the proceeding as to make lawful that which before was wholly unlawful? Because some creditor or stockholder attempted, in obedience to the court's direction, to show cause why an illegal decree should not stand, does the denial of his right clothe such decree with the vesture of legality? Does the court's assumption to do what was forbidden by the Constitution and law of the land become a lawful exercise of power by reason of some act of commission or omission on the part of a creditor or stockholder? Most certainly not.

It must be observed that, while the bill was against the corporation as sole defendant, the company was not directed by the decree to show cause why the receivers appointed should not be continued. Such order to show cause was addressed only to the creditors and stockholders, to each of whom a copy of the decree was directed to be mailed. It is therefore clear that, as the corporation was not directed to show cause, no possible dereliction is chargeable against it, because it did not file

an answer or answering affidavits. The defendant was not in court. It had no notice of the filing of the bill, and before the company had knowledge of its existence it was divested of its property by the court's decree. When the decree was entered, the suit between the parties was at an end. Final judgment had passed against the defendant. By such decree, not only was its property taken away, but all exercise of its franchises was forbidden by injunction, and a trust arose to administer the property, of which it had been unlawfully divested, under the direction of the court.

The so-called hearing on the rule consisted merely in passing on the affidavits of Robb, the plaintiff in the bill, and Everett L. Judkins, an attorney, on the one hand, and Ralph Nottebaum, a stockholder, on the other. Nottebaum's affidavit was filed in his own behalf. He had no authority or legal right to act for the company, and did not undertake to do so. His individual action can, in no sense, be construed as a corporate action. What he did, or neglected to do, cannot bind the corporation. In passing on the affidavits and entering the order of August 6, 1925, continuing the receivers, the rights of the corporation in its property, its business, and its franchises were in no way altered. The court's original decree, illegal and void for want of notice and an opportunity to be heard, continued to be illegal and void. The status remained unchanged. No act had been done which could give it life, nor estop the defendant from asserting its invalidity.

What afterwards followed in no way changed the status or rights of the defendant. On petition of the receivers, frequent allowances for compensation were made by orders of court. To the reports of the receivers, and to allowances made, exceptions by certain creditors were filed and overruled. To the last allowance of $400 per month to Receiver Leckie from the beginning of the receivership, $2,800 to Receiver Ormond, and $4,000 to Attorney Emery, an appeal was taken, which is No. 3716 of this court.

On November 9, 1926, Ralph Nottebaum, Sr., holder of a majority of the common stock, and Rudolph Nottebaum, a creditor, presented a petition, which was joined in by a majority in number and interest of the unsecured creditors, charging conspiracy to secure control of the company, both before and after the receivership, falsehoods in the bill of complaint, machinations to bring about a condition of insolvency, false and fraudulent inventory and appraisement, and other matters. The petition asked for the annulment of the

receivership for conspiracy and fraud, and the termination of the receivership because of present solvency, the removal of the receivers for wrongdoing in the administration of the trust, and for other relief. When the petition was presented, a rule to show cause was granted against the various parties charged with wrongdoing. On the following day, without order of court, the receivers paid the claims in full, with interest of all the creditors who joined in said petition, except Rudolph Nottebaum, Jr., thus terminating all participation of such creditors in the proceeding.

The questions of conspiracy, fraud, and other vital matters, raised by the petition, were not passed on by the court. On the return of the rule to show cause, which was filed on March 30, 1927, Judge Runyon designated the matters which might be considered under the petition, on evidence to be taken, holding that all questions antedating the receivership, concerning the charges of conspiracy and fraud, could not be considered, and that the question of insolvency of the company at the time of the receivership, had no place in the inquiry; the court holding that such question would not be reviewed or reconsidered. Some 11 days before this order was signed, namely, on March 18, 1927, an affidavit of personal bias and prejudice was filed by Ralph Nottebaum against Judge Runyun, asking that he proceed no further in the case, and that another judge be designated under section 21 of the Judicial Code (28 USCA § 25). Judge Runyon, while denying the charge of bias and prejudice, and expressing the opinion that the statute applies only to actions or proceedings thereafter to be heard, nevertheless, treated the affidavit as sufficient in law to accomplish the appointment of another judge, and certified accordingly.

■ From the order of March 30th, denying inquiry into the issues of fraud and conspiracy and the question of solvency, Ralph Nottebaum, Sr., and Rudolph Nottebaum, Jr., appealed, being No. 3715 of this court. In the foregoing proceedings the defendant corporation was not a party, was not cited to show cause, or in any manner connected therewith. It is plainly apparent, therefore, that the issues of fraud and conspiracy and present solvency raised by the appeal were not passed upon or adjudicated in any form. It is equally clear that the court was in error in treating his order of August 6, 1925, continuing the receivers, as foreclosing the question of insolvency at the time the receivers were appointed.

The third appeal, that of Patrick J. Ganley and Ralph Nottebaum, Sr., stockholders, and Rudolph Nottebaum, Jr., a creditor, being No. 3717, is from an order of the court permitting Judwill Company to sue the receivers to establish their alleged claim to the trade-name "Noxon" and the ownership of various formulæ under which the corporation operated, and is being operated by the receivers.

■ As appears from the record, pages 113–115, the order appealed from modified the injunction contained in the orders of February 25 and August 6, 1925, by which the receivers were appointed and continued. These orders being invalid and void as to the corporation, and the injunction having been illegally issued for the reasons heretofore stated, the order modifying the injunction falls with the injunction itself.

To briefly recapitulate:

1. The appointment of the receivers without notice or an opportunity to be heard, and the resulting divestiture of defendant's property and business, was a taking of their property without due process of law, and therefore illegal and void from the beginning.

2. The order of February 25th, appointing the receivers and granting an injunction against the defendant, was a final decree, in which the suit between the parties was at an end. The decree not only divested the defendant of its property, but, by denying to the company the power to exercise its franchises, created a trust for the administration of its property under the supervision of the court.

3. By the order of August 6th, the power of the receivers was simply continued. The status and rights of the defendant company, under the order of February 25th, were in no manner altered or affected by the order of August 6th.

4. In the subsequent proceedings the defendant corporation was not a party, and, in the circumstances, no act or omission is chargeable against it which could estop it from asserting the invalidity of the action by which its property was taken away and the exercise of its franchises enjoined.

5. The creditors and stockholders, who filed the petition of December 9, 1926, were entitled to be heard on the charges of fraud and conspiracy, and the question of the defendant company's solvency at the time the receivers were appointed, and at the time the petition was filed. This right having been denied, relief is sought in the appeal of Patrick J. Ganley et al., being No. 3716.

■ 6. The right to such relief is not dependent on the question whether the judge had, or had not, the right to make the order

appealed from, by reason of the affidavit of bias and prejudice. In either event, the order stood as a legal bar to the hearing, was not intermediate, but final in its effect, against which the only remedy was by appeal.

7. The injunction being issued in violation of the act of Congress, and being, in the circumstances, illegal and void, the order of March 17, 1927, modifying such injunction, is equally without legal effect and void.

From the foregoing it follows:

In the appeal of Patrick J. Ganley, Ralph Nottebaum, Sr., and Others, v. Receivers of the Noxon Chemical Products Co., Inc., William J. Robb and Others, being No. 3716, the motion to dismiss the appeal is overruled, the first assignment of error is sustained, and the order of March 30, 1927, is reversed at the cost of the appellees.

In the appeal of Patrick J. Ganley, Ralph Nottebaum, Sr., and Others, v. Judwill Co., Inc., the Receivers of the Noxon Chemical Products Co., Inc., and Others, being No. 3717, the first assignment of error is sustained, and the order of March, 1927, is reversed at the cost of the appellees.

In the appeal of Ralph Nottebaum, Sr., and Rudolph Nottebaum, Jr., v. Receivers of the Noxon Chemical Products Co., Inc., William J. Robb et al., being No. 3715, the first, second, fourth, fifth, and sixth assignments of error are sustained, and the order of court filed March 30, 1927, is reversed, at the cost of the appellees. It is further ordered that the receivership created by the order of court of February 25, 1925, and continued by order of August 6, 1925, is annulled and set aside, and the office of receivers of said corporation is vacated, and the receivers are directed to turn over and return to the Noxon Chemical Products Company, Inc., all its property and assets of every kind in their hands, and to make full and complete accounting to the court of their said trust.