## In re GENERAL FILM CORPORATION.

## UNITED STATES v. KELLOGG.

(Circuit Court of Appeals, Second Circuit. June 8, 1921.)

### No. 227.

1. **Bankruptcy ⇐341—Government's claim for taxes passed on in first instance by bankruptcy court and not allowed as matter of course.**

   Under Bankruptcy Act, § 64a (Comp. St. § 9648), claim of the government for taxes is not ordered paid in its entirety as matter of course and the trustee remitted to proceedings under Rev. St. § 3226 (Comp. St. § 9949) to have the money returned, but the bankruptcy court passes on and determines validity of the tax in the first instance; it not being a case where the trustee is seeking to maintain a suit for recovery of internal revenue taxes illegally assessed, the government and not the trustee being the moving party, and this notwithstanding the trustee moves that the government's proof of debt be reconsidered and rejected, a verified proof of debt in bankruptcy having probative force and making out a prima facie case requiring the objector to go forward.

2. **Internal revenue ⇐7—Additional payment to be made at end of year by lessee to lessors of films held rent, an expense of operation and not a declaration of dividends.**

   Under contract of the G. Film Company with ten manufacturers of moving picture films, each originally owner of one-tenth of G.'s common stock, whereby they were to lease to it their films at nine cents a foot plus a payment at the end of the year, such payment to be from G.'s net profits during the year in excess of a 7 per cent. dividend on preferred stock and a 12 per cent. dividend on its common stock, such payment to each to be such proportion of such balance as the number of feet leased by it to G. bore to the total number of feet leased by G. from all Patents Company licensees during the year, *held*, relative to the income tax of G., that such additional payments should be considered rent, an expense of operation, and not a declaration of dividends to the manufacturers, though the question is one of intent.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of the General Film Corporation. An order of the referee disallowing claims of the United States for taxes was affirmed by the District Court, and the United States appeals. Affirmed.

Francis G. Caffey, U. S. Atty., of New York City (E. F. Unger, of New York City, of counsel), for the United States.

Louis Weinberger and Max Sheinart, both of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. September 23 and December 23, 1919, the United States filed two proofs of claim against the General Film Corporation, bankrupt, under the Act of October 13, 1913, for income tax in the sum of $11,395 with interest in addition to the amount paid by the corporation for the year ending December 31, 1914, and for in-

come tax in the sum of $4,433.81 with interest assessed by the Commissioner of Internal Revenue in addition to the amount returned by the corporation for the year ending December 31, 1915.

The additional tax claimed for 1914 never was assessed, and the time for assessment seems to have expired. Chapter 16, L. 1913, sec. 2 (e), 38 Stat. L. 169. The additional tax for 1915 was assessed.

The trustee in bankruptcy objected to the allowance of the claims on the ground that the company had correctly returned and paid the tax upon its net taxable income for 1914 and had correctly returned the amount of its net taxable income for 1915. Macgrane Coxe, Esq., the referee, disallowed both claims, and Judge Mayer confirmed his report. The United States filed petitions to revise.

[1] The government's first proposition is that the only remedy open to the trustee for correcting any error is to pay the taxes and then proceed under Rev. Stat. 3226 (Comp. St. 5949) by appeal to the Commissioner of Internal Revenue and, if the Commissioner delay decision for more than six months, to bring suit. But Congress in the Bankruptcy Act of 1898 (Comp. St. §§ 9585–9656) has departed very considerably from the principles of public policy theretofore prevailing as to the rights of the sovereign. The Supreme Court pointed this out in Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U. S. 152, 32 Sup. Ct. 457, 56 L. Ed. 706.

Section 64a of the Bankruptcy Act reads:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court." Comp. St. § 9648.

We regard this section as binding upon the government because it is named therein and, while conferring priority, as giving the bank-. ruptcy court the power to hear and determine any question that arises as to the amount or legality of a tax assessed by it. The provision applies to taxes of all the persons mentioned, and we could not differentiate the government from the other persons in the absence of language justifying it.

But section 3226, U. S. Rev. Stat., could under no circumstances apply to the case under consideration because the trustee is not seeking to maintain a suit for the recovery of internal revenue taxes illegally assessed. Clinkenbeard v. United States, 21 Wall. 65, 22 L. Ed. 477; United States v. Nebraska Distilling Co., 80 Fed. 285, 25 C. C. A. 418.

The United States Attorney contends that the trustee by moving that the government's "proof of debt be reconsidered and rejected" has become the moving party and therefore bound to proceed under Rev. Stat. § 3226. But in bankruptcy a verified proof of debt has greater effect than the filing of a complaint. It has probative force and makes out a prima facie case, for which reason the objector is required to go forward. We said in Re Dresser, 135 Fed. 495, at page 498, 68 C. C.

A. 207, at page 210, affirmed Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584:

"We are dealing here with a statute the primary object of which is to collect the property of the bankrupt speedily and divide it equally among his creditors. Analogies drawn from pleadings in actions at common law and in equity furnish little assistance in the interpretation of such a law. If the doctrine be once established that a proof of claim in bankruptcy is entitled to no greater weight than a complaint in an ordinary action at law the most serious results will follow. Any vindictive or contumacious creditor can, by filing objections, compel creditors to come from distant states and even from foreign countries to testify in support of their claims before a word of testimony impeaching their validity has been adduced. No one disputes that in the absence of objection the proof of claim stands as sufficient warrant for the payment of a dividend based thereon. It is not then a mere pleading, confessedly it possesses some probative force. This being so, it is not easy to approve the logic which deprives it of all weight as evidence upon the mere filing of an objection. If the appellant's contention be sustained an efficient administration of the law might, as we have seen, be made difficult, if not impossible. We see no reason or necessity for such an interpretation of the law. On the other hand, a construction which requires the objector to offer some proof before subjecting the creditor to the expense and annoyance of presenting sustaining evidence seems to be in accord with the intent and purpose of the act and to present a simple, efficient and perfectly fair rule of procedure. In the vast majority of instances the claims of creditors are susceptible of the most simple verification. The trustee has the bankrupt's books at his disposal and can at any time call upon the bankrupt for assistance. In cases where exaggerated or fraudulent claims are filed there is no difficulty in ascertaining and proving facts sufficient to establish the true character of the claim, thus putting the claimant upon his proof."

[2] We come now to the merits. The question is one purely of law, viz., whether the amount which the trustee seeks to deduct from the bankrupt's gross income as an expense of operation is such or is, as the government claims, a distribution of net profits. April 21, 1910, the bankrupt had contracted with ten manufacturers of moving picture films to lease their films at 9 cents a foot plus a payment at the end of the year. Article 8 of the agreement regulating this additional payment reads:

"The party of the second part further covenants and agrees that it will, in addition to the leasing prices hereinbefore referred to, pay to the party of the first part, at the end of each year during the continuance of this agreement, the following share of the net profit realized by it during that year from the subleasing and leasing, as aforesaid, of 'Licensed Motion Pictures' to exhibitors and from the sale of 'Licensed Projecting Machines,' and from all other sources, to wit, such a proportion of the balance, if any, of such net profit, remaining after deducting therefrom the dividend of seven per cent. (7%) for that year on its issued preferred stock and an amount equal to a twelve per cent. (12%) dividend on its issued common stock, as the number of running feet of 'Licensed Motion Pictures' leased by it from the party of the first part during that year bears to the total amount of running feet of 'Licensed Motion Pictures' leased by it from all 'Patents Company Licensees aforesaid' during that year ('Licensed Motion Pictures' manufactured for or purchased by the party of the second part, as aforesaid, as well as 'Licensed Motion Pictures' leased to it by 'Patents Company Licensees aforesaid' produced from negatives made on its order, to be excluded)."

The common stock of the bankrupt was $100,000 in 10,000 shares of $10 each, and each of the ten manufacturers originally owned 1,000

shares. The government contends that this fact, together with the fact that the extra footage charge was to come out of the net profits after deducting 7 per cent. dividend on the preferred and 12 per cent. on the common stock, shows that the payment is really a declaration of a dividend to the manufacturers and not a payment of rent for the films leased from them. There is undoubtedly great force in this argument. On the other hand, the charge of nine cents a foot for the films was shown to be much below what they seem to have been worth, and the additional payment was not to be made to the manufacturers in proportion to the stock they held, but in proportion to the amount of film footage each had furnished the bankrupt during the year. They furnished different amounts and were entitled to their proportion of the surplus without any reference to the amount of their stockholding or even if they held no stock at all. The question is one of intention, and we are not disposed to disturb the construction which the referee and the court below put upon the contract.

Decree affirmed.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes