S. DAVIDSON & BROS. INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25623–25625.   Promulgated December 11, 1930.

*Denver A. Busby, C. P. A.,* for the petitioner.
*Arthur Carnduff, Esq.,* for the respondent.

642

OPINION.

LANSDON: No brief having been filed, or oral argument made, in respondent's behalf, we are not advised of his views on the several issues raised by the petition, or the reasons for his several acts against which petitioner complains.

Respondent has added to net income as returned by petitioner for 1917, 1919, and 1920, the amounts of $77,658.37, $11,403.33, and $3,378.10, respectively, representing profits received in those years on account of installment sales made in 1916. Petitioner attacks this as improper under the provisions of section 705 of the Revenue Act of 1928, which read as follows:

(a) If any taxpayer by an original return made prior to February 26, 1926, changed the method of reporting his net income for the taxable year 1924 or any prior taxable year to the installment basis, then, if his income for such year is properly to be computed on the installment basis—

(1) No refund or credit of income, war-profits, or excess-profits taxes for the year in respect of which the change is made or any subsequent year shall be made or allowed, unless the taxpayer has overpaid his taxes for such year, computed by including, in computing income, amounts received during such year on account of sales or other dispositions of property made in any prior year; and

(2) No deficiency shall be determined or found in respect of any such taxes unless the taxpayer has underpaid his taxes for such year, computed by excluding, in computing income, amounts received during such year on account of sales or other dispositions of property made in any year prior to the year in respect of which the change was made.

(b) Nothing in this section shall be construed as in any manner modifying section 607, 608, 609, or 610 of this Act, relating to the effect of the running of the statute of limitations.

Respondent admits in his answer that net income for each of the years on appeal is properly to be computed on the installment basis. Therefore, whether respondent is correct in adding to net income of the years on appeal the profits received in those years on account of installment sales made in 1916, depends entirely upon whether the petitioner changed its method of reporting income to the installment basis by an original return for a taxable year prior to 1924.

The facts we have found leave no doubt that the change in method of reporting income to the installment basis was made by an original return for 1917. The effect of the adjustments made in the books at the close of that year and the two later years on appeal was to defer the accounting for the estimated profits represented in the uncollected deferred payments to a later period than that in which the sales were made. Whatever may be said as to the correctness of the accounting procedure followed, its purpose and effect were to place the accounting for income from installment sales on the installment basis. Since the net income reported in the original return for 1917 was computed in accordance with the method employed in keeping the books, it must be held that the change in method of computing income to the installment basis was made by that return. Accordingly, we must hold that respondent erred in determining deficiencies for the years on appeal upon the basis of net incomes which included amounts received in those years on account of installment sales made in 1916.

The respondent's action in excluding from invested capital for 1919 and 1920 the amounts of $16,260.68 and $4,488.18, respectively, representing the unrealized profits in 1916 installment sales contracts outstanding and unpaid at the beginning of those years, is approved upon authority of *Blum's, Inc.*, 7 B. T. A. 737, and *Jacob Bros. Co.*, 19 B. T. A. 59.

The proper adjustments of invested capital for 1919 and 1920 on account of any additional taxes found to be due for 1917 under this decision will be made upon final order of redetermination under Rule 50.

The respondent's action in reducing invested capital for 1919 and 1920 by the amounts of $15,623.96 and $36,971.02, respectively, on account of additional income and profits taxes for 1918, the assessment and collection of which were barred by the statute of limitations when the deficiencies for 1918 and the taxable years were asserted, is held to be erroneous upon authority of *Lancaster Lens Co.*, 10 B. T. A. 1153; *National Products Co.*, 11 B. T. A. 511; and *Green River Distilling Co.*, 16 B. T. A. 395.

The proper adjustment of invested capital for 1920 on account of any additional tax found to be due for 1919 under this decision, will be made upon final order of redetermination under Rule 50.

In view of the agreement on the part of the former stockholders of L. Harbach Sons Co. to assume and pay any and all additional income and profits taxes which might be assessed against that company for any year prior to 1920, and the fact that they did assume and pay the assessment of additional taxes for 1919 in the amount of $39,866.10, the respondent's action in reducing consolidated invested capital for 1920 by the amount of $16,799.58 on account of such additional taxes for 1919 is held to be erroneous, upon authority of *Houston Belt & Terminal Railway Co.*, 6 B. T. A. 1364.

The last question for consideration is whether the petitioner was affiliated, during the period May 26 to December 31, 1920, with the Iowa Furniture Store within the meaning of section 240 (b) of the Revenue Act of 1918. During the period in question, 76 per cent of the capital stock of the Iowa Furniture Store was owned outright by the same persons who owned 99.15 per cent of petitioner's capital stock. Of the remaining 24 per cent of the stock of the Iowa Furniture Store, 4 per cent was owned by Roth, an employee of the petitioner, and 20 per cent was owned by Kohan, an employee of the Iowa Furniture Store, who had formerly been in the petitioner's employ. Both Roth and Kohan had acquired their stock under agreements in which the right of repurchase of the stock was reserved in the Iowa Furniture Store should said individuals, " for any reason or in any manner," cease to be employees of the petitioner or " of some corporation fifty per cent or more of whose stock is owned by the owners of fifty per cent or more of the stock " of the petitioner company. The events related in the findings of fact clearly demonstrate the significance of this reservation and the futility of any opposition to the policies of the Davidsons, on the part of Roth or Kohan. Any opposition from that source which seriously challenged the control of the Davidsons over the affairs of the Iowa Furniture Store, or their right alone to determine, to the fullest extent, its business policies without interference on the part of stockholder-employees, could be effectively removed by peremptory discharge of the offending party with the consequent relinquishment of status as a stockholder. This, in effect, is precisely the course they finally took in dealing with Kohan, when they deemed it no longer advisable to tolerate his continued objections to the prices which they determined should be made by the petitioner for merchandise furnished to the Iowa Furniture Store. Kohan's objections led only to a forced severance of his relations with the Iowa Furniture Store, as an employee and stockholder.

All circumstances considered, we find that substantially all of the stock of the petitioner and the Iowa Furniture Store was owned or controlled by the same interests, and that respondent erred in

holding that these two corporations were not affiliated for the period May 26 to December 31, 1920.   Cf. *Isse Koch & Co.*, 1 B. T. A. 624; and *Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MORRIS, TRAMMELL, and MURDOCK dissent.