VIRGINIA BEACH GOLF COURSE ANNEX CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46561. Promulgated July 15, 1931.

*J. S. Barron, Esq.,* for the petitioner.
*Hartford Allen, Esq.,* for the respondent.

**1172**

OPINION.

SMITH: The petitioner made its income-tax return for 1926 upon the installment basis of reporting, the same basis upon which it had made its returns for several prior years. No question is raised by the respondent but that the return was correctly made, so far as income from collections on the installment notes is concerned, were it not for the fact that within the year the petitioner distributed all of its assets to its stockholders in final liquidation of the corporation, included in which were installment notes of a face value of $127,681.66 (the fair market value of which for the purposes of this proceeding was stipulated to be 80 per cent of their face value, or $102,145.33), and upon which the petitioner would ultimately have realized profits of $78,040.08 if they had been collected in full. Upon these facts the respondent makes the following contentions:

(a) That when the corporation declared an unliquidated dividend in kind of $150,000 it created an indebtedness to its stockholders of that amount and that when it satisfied that indebtedness by the distribution of installment notes at their face value the petitioner received income to the same extent as though it had sold the notes for cash at their face value and had distributed the cash to its stockholders.

(b) That if the petitioner did not realize income from such distribution to the full amount of $78,040.08, it did realize income to the extent of $52,503.75, which represents the profit which the company would have realized had it sold the notes for cash in 1926 at their fair market value of $102,145.33.

(c) That the petitioner is not entitled to make a return for 1926 upon the installment basis in so far as sales of lots in 1926 are concerned, his theory being that the petitioner realized more than 25 per cent of the sales price in 1926 upon lots sold in that year.

1. That the declaration of a cash dividend from the profits of a corporation creates an indebtedness in favor of the stockholders to the full amount of the dividend is well settled. *Staats* v. *Biograph Co.*, 236 Fed. 454; *United States* v. *Guinzburg*, 278 Fed. 363; *Plant* v. *Walsh*, 280 Fed. 722; *A. H. Stange*, 1 B. T. A. 810; *William H. Davidow Sons Co.*, 1 B. T. A. 1215. A dividend in the sense used above, however, relates only to a dividend paid out of profits. This is the sense in which the term " dividend " is ordinarily used. It was said in *Hellmich* v. *Hellman*, 276 U. S. 233;

It is true that if section 201 (a) [Revenue Act of 1918] stood alone its broad definition of the term " dividend " would apparently include distributions made to stockholders in the liquidation of a corporation—although this term, as generally understood and used, refers to the recurrent return upon stock paid to stockholders by a going corporation in the ordinary course of business, which does not reduce their stock holdings and leaves them in a position to enjoy future returns upon the same stock. * * *

The stockholders of a corporation are the equitable owners of the corporate property. *Mastin* v. *Niagara etc. Co.*, 122 N. Y. 165.

Upon the dissolution of a corporation all of its property, both personal and real, is to be used to pay its debts and the remainder, if any, is to be distributed to its shareholders. Cook on Corporations, vol. 3, p. 2363; *Okmulgee Window Glass Co.* v. *Fink*, 260 Fed. 159. The dividend which was declared by the petitioner in final liquidation of the corporation created no indebtedness of the corporation to the stockholders beyond the rights which they had to receive the assets after debts had been paid. It is to be noted, moreover, that the dividend is stipulated to have been an unliquidated dividend in kind. The cash value of the assets to be distributed did not amount to and were known by the stockholders not to amount to $150,000. The dividend was declared in the amount of $150,000 merely to reflect the face value of the installment notes plus the known value of the other assets in order to facilitate an equitable division of the assets among the stockholders. In the situation we think that it can not be validly contended that the declaration of the dividend in the amount of $150,000 constituted an indebtedness of the corporation to the stockholders of that amount. In determining for tax purposes the nature and effect of a declaration of a dividend, matters of substance rather than matters of form must govern. *United States* v. *Phellis*, 257 U. S. 156; *United States* v. *Davison*, 1 Fed. (2d) 465.

2. With respect to the contentions of the respondent that the petitioner realized income upon the distribution of the installment

notes in question to the extent of the difference between the cost of the property to the petitioner covered by the installment notes ($49,641.58), and their fair market value at the date of distribution ($102,145.33), or $52,503.75, we are of the opinion that the transaction is not to be treated as though the petitioner sold the notes for $102,145.33 cash. The respondent, in article 548 of Regulations 69, has provided:

* * * No gain or loss is realized by a corporation from the mere distribution of its assets in kind upon dissolution, however they may have appreciated or depreciated in value since their acquisition.

The respondent contends that this provision of the regulations does not apply to the petitioner; that inasmuch as the petitioner's books of account were kept upon the accrual basis the profits to be derived from the sales accrued in the year when the sales were made; that the effect of the statute and the regulations in respect of reporting sales of real estate on the installment basis is not to define income, but to afford petitioner the privilege of deferring reporting the profit as taxable income until a later date; and that the effect of the determination of the respondent in this proceeding is merely to require a modification of the installment basis of reporting. In other words, it is contended that the correct reflection of the income of this petitioner upon the installment basis requires that deferred profits be treated as income at the time the petitioner puts it out of its power thereafter to receive the payments from the purchasers, which, in the ordinary sense, would include such income. In this connection particular attention is directed to that portion of section 212 (b) of the Revenue Act of 1926 which provides that " the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."

Section 212 (d) of the Revenue Act of 1926 provides as follows:

Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term " initial payments " means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

The argument made above is the same which was made before this Board in *Wallace Huntington et al.*, 15 B. T. A. 851. We there con-

sidered at great length the arguments made by the respondent. In the course of our opinion we stated:

It seems to be the theory of the respondent that when a deferred payment sale has been consummated the vendors are at once in receipt of income and that the only benefit conferred by section 212 (d) is that it permits the vendors to return such income over the years during which the notes mature. This contention not only does violence to the words of the statute, but overlooks the purpose which Congress had in view when they enacted it. Prior to the date of its enactment, the Commissioner had been holding that where purchase money notes had no real market value they were not returnable as income, but while so holding as a matter of law, he very often determined that such notes had a value equal to cash, in cases where the initial payment was quite small. It was the purpose of Congress to deny to the Commissioner the right to place any value on such notes where the initial payment did not exceed one-fourth of the purchase price. See Report of Committee on Finance, 69th Cong., No. 52, p. 19. If unpaid purchase money notes had no real market at the date of delivery or during the taxable year in which the sale was consummated, they can in no sense be deemed income or to include income, since the receipt of that which has not such value can not be construed as the receipt of income. Congress has in effect now declared that when the initial payment does not exceed one-fourth of the purchase price, the unpaid notes do not possess market value. It follows that petitioners were not in receipt of income when they received the notes in question and when they gave them to their children. Nor do we perceive why petitioners should be liable for the tax on the parts of the notes transferred, any more than that their estates after their deaths should be liable for the tax on the gain arising from the sale. If petitioners are liable for the tax from the date of the consummation of the sale, it would seem to follow that such liability could not be escaped by death.

Section 44 (d) of the Revenue Act of 1928 provides as follows:

*Gain or loss upon disposition of installment obligations.*—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

Although the respondent does not contend that this provision of the law should be applied retroactively (and we have held that it should not in *Wallace Huntington et al., supra.*), he holds that the provision is declaratory of the basis to be applied to determine the profit realized by the petitioner in 1926 upon the disposition of the installment notes under the general authority of section 212 (d) of the Revenue Act of 1926. We are of the opinion that the contention of the respondent upon this point is not well founded. Section 44 (d) of the 1928 Act was designed to amend the taxing statutes as we have pointed out in *Wallace Huntington et al., supra.* It was not designed to be declaratory of existing law. The conten-

1176

tion of the respondent, therefore, that the petitioner derived income upon the distribution to the stockholders based upon their fair market value, must be rejected.

The final contention of the respondent is that the petitioner is not entitled to report upon the installment basis income from the sales of lots in 1926. It is contended that when the petitioner distributed installment notes from such sales to its stockholders in final liquidation of the corporation there was a realization of profit, which, added to the amounts of cash paid in by the purchasers of the lots, exceeded the 25 per cent initial payment provided for by the statute. We have held in *Packard Cleveland Motor Co.*, 14 B. T. A. 118; *Lucius H. Elmer*, 22 B. T. A. 224; and *Duram Building Corporation*, 23 B. T. A. 796, that where a taxpayer makes sales of property on small down payments, and within the year of sale disposes of the installment obligations for cash or in liquidation of its indebtedness, the amounts realized thereon should be added to the cash received from the vendee for the purpose of computing the initial payments. But this is not the same as saying that in all cases where there have been sales of property for small down payments and installment obligations, and the installment obligations have been distributed to the stockholders in final liquidation of the corporation, income has been received from such source.

Upon such distribution nothing has come into the treasury of the corporation which is available to it for the payment of debts or any asset of any kind. No indebtedness of the corporation has been liquidated by the distribution. Section 44 (d) of the Revenue Act of 1928 is not to be applied retroactively. We see no reason why the petitioner should not be permitted to make its return for 1926 in respect of sales made in that year upon the installment basis the same as it had made returns in prior years upon that basis.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRAMMELL concurs in the result only.

LANSDON and STERNHAGEN dissent.