JOHN A. NELSON COMPANY (FORMERLY KNOWN AS ROCKFORD MILLING MACHINE COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 32986, 44700. Promulgated June 23, 1953.

*J. S. Seidman, C.P.A.,* and *F. E. Seidman, C.P.A.,* for the petitioner.

*Brooks Fullerton, Esq., John D. Kiley, Esq.,* and *J. E. Marshall, Esq.,* for the respondent.

534

OPINION.

SMITH: The petitioner contests the respondent's disallowance of the deductions claimed by reason of the payment of 5 percent of its net profits to the Sundstrands in each of the taxable years before us. The respondent has treated these amounts as capital expenditures, applying them to the several United States patents, and has allowed deductions for their amortization over the remaining term of the patents. The petitioner argues that the patents had been acquired prior to the payments now in question and that:

\* \* \* Instead \* \* \* of giving the Sundstrands a bonus in some fixed and perhaps arbitrary amount, petitioner and the Sundstrands agreed to have the extra compensation measured by the direct index of the effect of the services of the Sundstrands—petitioner's profits. \* \* \*

The Board has held that the cost of patents, legal expenses incident to procuring and protecting the patents, and experimental expenses in connection with their development are capital expenditures. See *Beaumont Co.*, 3 B.T.A. 822; *American Seating Co.*, 4 B.T.A. 649; affd. on this point, 50 Fed. (2d) 681; *Buffalo Forge Co.*, 5 B.T.A. 947; *Grand Rapids Show Case Co.*, 12 B.T.A. 1024. See also *Dempster Mill Mfg. Co. v. Burnet*, 46 Fed. (2d) 604. However, we also held in *American Seating Co.*, *supra*, that an item of $15,000 representing royalty payments was not to be treated as a capital expenditure.

The agreement with the Sundstrands recited that the petitioner had been granted nine domestic and eight foreign patents on inventions made by the Sundstrands, who had also assigned to the petitioner their entire rights to eighteen domestic and eight foreign applications for letters patent. Apparently, if the amounts in question are to be treated as capital expenditures, the capitalization must be with respect to both foreign and domestic patents and applications therefor.

While the Sundstrands owned shares of stock in the petitioner, no point is made that the payments bore any relation to their stockholdings. Their services were doubtless of value to the petitioner and, in recognition of the Sundstrands' contributions to the success of the enterprise, the petitioner agreed to pay them a percentage of its annual net profits. Whether we consider the payments based upon a percentage of profits as compensation for services rendered (see *Tyler & Hippach, Inc.*, 6 B.T.A. 636, 641), or as in the nature of a rental or royalty for the use of the product of their inventive genius (see *Webb Press Co., Ltd.*, 3 B.T.A. 247; Office Decision 440, Cumu-

lative Bulletin No. 2, p. 215), such payments were in satisfaction of an obligation relating directly to the business of the particular year for which they were paid. We can not see that these payments add anything to the petitioner's capital investment, it having already acquired the patents and applications therefor. There are further practical difficulties in treating these payments, relating to the business of a particular year and measured by the success of that year's operations, as capital expenditures. These difficulties are the changing base upon which to rest an amortization allowance, the variable terms of the several patents, and the term of the agreement as opposed to the term of the patents, requiring the payments to the Sundstrands even in the last year of the term of a patent or patents, but not requiring payments in a year when there were no profits, even though the cost of the patents would nevertheless be subject to amortization. In these circumstances, we hold that the respondent erred in capitalizing the expenditures involved and that the deductions claimed should be allowed. Cf. *Jamison Coal & Coke Co.*, 24 B.T.A. 554; *Hutchison Coal Co.*, 24 B.T.A. 973; affd., 64 Fed. (2d) 275; *L. Schepp Co.*, 25 B.T.A. 419, 430; *In re General Film Corp.*, 274 Fed. 903.

The second issue is whether the amounts collected in the respective taxable years upon installment sales made prior to 1924 are to be included in the income of the year of collection. The petitioner relies upon the provisions of section 705 (a) (2) of the Revenue Act of 1928, which is as follows:

(a) If any taxpayer by an original return made prior to February 26, 1926, changed the method of reporting his net income for the taxable year 1924 or any prior taxable year to the installment basis, then, if his income for such year is properly to be computed on the installment basis—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) No deficiency shall be determined or found in respect of any such taxes unless the taxpayer has underpaid his taxes for such year, computed by excluding, in computing income, amounts received during such year on account of sales or other dispositions of property made in any year prior to the year in respect of which the change was made.

The facts are not in dispute, and, viewing the matter purely from the standpoint of the original installment sales returns for 1924 and subsequent years, the petitioner is within the letter of the statute. But, "A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter. The intention of the lawmaker is the law." *Smythe* v. *Fiske*, 23 Wall. 374, 380. We have held that where a taxpayer, by an original return filed within the time prescribed by statute, changes from the accrual to the installment basis of reporting its income, " no deficiency shall be determined on account of amounts received during the tax-

able year from sales made in years prior to that of the change to the installment basis." *Tull & Gibbs, Inc.*, 21 B.T.A. 1073, 1074. See also *S. Davidson & Bros., Inc.*, 21 B.T.A. 638; *Grand Rapids Show Case Co., supra.*

In *Jacob Bros. Co.* v. *Commissioner*, 50 Fed. (2d) 394, 396, the Circuit Court of Appeals for the Second Circuit determined that uncollected profits upon installment sales which had been reported upon the accrual basis should be included in invested capital of the years following a change to the installment basis of reporting income. The court said, *inter alia:*

* * * Section 705 permits the taxpayer to exclude from the later year's income cash collected on installment contracts reported on the accrual basis in years prior to the change of method. In other words, *the accrual method was allowed to stand unaffected in respect to income for years prior to 1918.* Hence the surplus and undistributed profits account obtained by the accrual method is likewise unaffected by the change. * * * [Italics supplied.]

Under section 212 (d) of the Revenue Act of 1926, the Commissioner was given authority to prescribe regulations for reporting income upon the installment basis. Article 42, Regulations 69, provides such regulations for reporting income from the sale of personal property on the installment plan, and further that:

. The provisions of this article shall be retroactively applied in computing income from the sale of personal property under the Revenue Acts of 1916, 1917, 1918, 1921, and 1924, or any such Acts as amended. (See section 1208). Any dealer in personal property on the installment plan whose books of account contain adequate information and were kept so that income can be accurately computed on the installment basis in accordance with the provisions of this article may file amended returns accordingly, and the excess of the amount of any tax previously paid over the tax as computed on the installment basis as herein provided shall, subject to the statutory period of limitations properly applicable thereto, be credited or refunded as provided in section 284 and articles 1301-1306.

The facts show that the respondent recomputed the petitioner's tax liability for the years 1918 to 1923, inclusive, and refunded to the petitioner the excess of the tax paid for those years on the accrual basis above the amount of the tax computed upon the installment basis. The petitioner, having received the benefit of such readjustments to its income, insists that it should receive a further benefit by excluding the amount of the collections in 1924, 1925, and 1926 upon installment sales prior to 1924 from its income for those years. We do not believe such dual benefits were intended by Congress. The accrual method used by this taxpayer was not allowed to stand and is affected by the adjustments made by the respondent, and the refunds accepted by the petitioner in accordance with article 42 of Regulations 69. " Men must turn square corners when they deal with the

Government." *Rock Island, A. & L. R. Co.* v. *United States*, 254 U.S. 141. This petitioner, having received the benefit of the change to the installment basis of reporting income, not only for the years following the change but also for the years prior to that change, should not be heard to complain because the respondent has included in its income for 1924, 1925, and 1926, amounts representing collections upon installment sales of prior years, which otherwise would go untaxed. Otherwise, this petitioner's true income would not be properly returned for taxation. In these circumstances, the respondent is sustained.

The remaining issue is whether the respondent has erroneously included in income for 1926 an amount of $322,980.29, representing " the reserve for unrealized profit on installment sales." It appears that the petitioner disposed of the installment sales contracts to which this amount relates in 1926, and the respondent has treated the disposition as a realization of the profit. The petitioner contends that the disposition was a part of the transaction resulting in a reorganization to which it was a party, and therefore no gain is to be recognized thereon.

These proceedings were submitted upon a stipulation, in which appears the following statement: " On December 31, 1926, petitioner was a party to a reorganization." In *Jamison Coal & Coke Co.*, *supra*, we said:

* * * Stipulations can relate only to facts. We can not recognize or give effect to stipulations of law. * * *

On brief—

The respondent contend[s] that the $322,980.29 represented profits which the petitioner made *at the time the merchandise was sold.* By virtue of Sections 212 (d) and 1208 of the Revenue Act of 1928, petitioner, because it had sold on the installment plan, was given a special privilege. That privilege was the right to defer payment of taxes on the profits on installment sales until the collection of the installment payments. * * *

When the petitioner disposed of those accounts receivable it, by its own voluntary act, terminated its right to the privilege of deferment, and since it received dollar for dollar in stock and cash for those accounts receivable, the portion of such accounts representing income became realized profit to the petitioner—not a profit resulting from or coming into existence on account of the reorganization [*sic*], but merely the collection of a profit earned prior to that time. * * *

In *Packard Cleveland Motor Co.*, 14 B.T.A. 118, the Board held that the taxpayer realized income upon the sale of installment obligations in the taxable year. The provisions of section 44 (d) of the Revenue Act of 1928 lend color to the respondent's contention, but that section of the statute is not retroactive in its effect. In *Wallace Huntington*, 15 B.T.A. 851, we held that the taxpayer realized no

income from the gift of installment obligations. In *Virginia Beach Golf Course Annex Corp.*, 23 B.T.A. 1170, we held that the taxpayer realized no income from the distribution of installment obligations to its stockholders.

*Charles F. Meagher*, 20 B.T.A. 68, involved a disposition of installment obligations in an exchange of property for stock. The syllabus of that case follows:

GAIN OR LOSS—EXCHANGE—INSTALLMENT OBLIGATIONS.—Petitioner, doing business as a sole proprietor, to a large extent on the installment basis, organized a corporation to which he transferred in 1923 all of the assets of the business for all of its authorized capital stock. Included in the assets conveyed were $117,863.13 of uncollected installment obligations representing unrealized profits of $53,488.57. *Held* that the transfer of these installment obligations, being a transaction provided by section 202 (c) (3) of the Revenue Act of 1921 not giving rise to gain or loss, respondent erred in including in petitioner's income for the year 1923 the sum of $53,488.57 as a profit realized by reason of petitioner's disposition of them in this manner.

The facts of the *Meagher* case clearly established a nontaxable exchange within the purview of section 202 (c) (3) of the Revenue Act of 1921. In disposing of the respondent's contention that "the amount represented by the profit included in the installment obligations would escape tax", we said:

* * * that result does not necessarily follow, as this petitioner has received in the transaction stock of the corporation in exchange for the assets conveyed, and the realization as income of the value represented by the profit included in the amount of the installment obligations in question, is merely deferred until the sale by him of the stock received upon such sale, as his gain would be measured upon the basis of the cost to him of the transferred assets, which would not include the $53,488.57 of profit included in the $117,863.13 of installment obligations.

In the instant proceedings this corporate taxpayer transferred all of its assets, including the installment obligations, except $100,000 in cash, to the new corporation in exchange for $2,000,000 in cash and 14,060 shares of the new company's preferred stock of the par value of $100 per share. The Elliott-Fisher Co. paid into the new corporation the $2,000,000 of cash and received all of the new corporation's voting stock. The petitioner used a portion of the cash to retire its own preferred stock and distributed the balance of the cash and the 14,060 shares of preferred stock to its common stockholders. It does not appear that the petitioner corporation has ever been dissolved.

The petitioner contends that there was a reorganization to which it was a party and that no gain or loss is to be recognized upon the transfer of its property to the new corporation. Unlike the transfer

in the *Meagher* case, this petitioner neither transferred all of its property nor received all of the stock of the transferee. The pertinent portions of the Revenue Act of 1926 are set out in the margin.[1]

The petitioner was not a party to a reorganization within the meaning of the statute. Upon the transfer, pursuant to the terms of the contract of sale, the petitioner neither transferred all of its property nor received " a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock " of the new corporation. Nor does it appear that this petitioner was ever in control of the new corporation, or that the new corporation was in control of the petitioner. Furthermore, while the transferee may be said to have acquired substantially all the properties of this petitioner, disregarding, for the moment, the petitioner's retention of $100,000 in cash, and thereby became the " corporation resulting from a reorganization ", and as such is " a party to a reorganization ", that does not make this petitioner " a party to a reorganization ", since that term includes both corporations (transferee and transferor) only in the event that one acquires at least a majority of the voting and other stock of the other. Here, the petitioner acquired

---

[1] SEC. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

\*    \*    \*    \*    \*    \*

(b) (3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

\*    \*    \*    \*    \*    \*

(e) If an exchange would be within the provisions of paragraph (3) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed.

\*    \*    \*    \*    \*    \*    \*

(h) As used in this section and sections 201 and 204—

(1) The term " reorganization " means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term " a party to a reorganization " includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

542

only nonvoting stock in the new corporation, and that corporation acquired none of the petitioner's stock. The petitioner has not brought the transactions within the provisions of section 203 (h). As the Supreme Court said in *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462, " Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short term purchase money notes." Little more than that was acquired by this petitioner, since definite provision was made in the agreement with Elliott-Fisher Co. for the retirement of the nonvoting preferred stock issued to the petitioner. See also *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937.

The exemption provided in section 203 (b) (3) relates to exchanges of property by " a corporation a party to a reorganization ", and is enlarged by section 203 (e) on condition that the transferee distribute the money and property received upon the exchange " in pursuance of the plan of reorganization." There is nothing in the agreement with Elliott-Fisher Co. directing the distributions that the petitioner made to its stockholders. That agreement apparently contemplated the continuance of the petitioner's corporate existence, for provision was made, and later acted upon, whereby the corporate identity of the petitioner was changed from Sundstrand Corporation to John A. Nelson Co. Furthermore, the petitioner's stockholders authorized " the sale and transfer " of its property and assets, and the distribution of the consideration " received from such sale." In these circumstances, the transaction involved can not be said to have been a nontaxable exchange of property. Cf. *Howard F. Burns, Executor*, 28 B.T.A. 28; *Connecticut Power Co.*, 28 B.T.A. 38.

The fact that the petitioner disposed of its installment obligations in a taxable transaction distinguishes this case from the *Meagher* case, *supra*, and we accordingly hold that the respondent properly determined that the petitioner realized the deferred profit upon installment obligations when it disposed of the obligations in 1926, there being nothing in the record to indicate that the petitioner did not receive the full face value of such obligations.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRAMMELL, MURDOCK, GOODRICH, LEECH and ADAMS concur in the result.

VAN FOSSAN dissents.