## GUARANTY TRUST CO. OF NEW YORK v. HENWOOD. *

Nos. 10679, 10687.

Circuit Court of Appeals, Eighth Circuit.

Nov. 13, 1936.

Rehearing Denied Dec. 4, 1936.

*Writ of certiorari denied 57 S. Ct. 492, 81 L. Ed. —.

Malcolm Fooshee, of New York City, and Guy A. Thompson, of St. Louis, Mo. (Edwin S. S. Sunderland, of New York City, and John M. Holmes, of St. Louis, Mo., on the brief), for appellant.

Carleton S. Hadley and A. H. Kiskaddon, both of St. Louis, Mo., for appellee.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

This case is before us upon two appeals from an order entered in the lower court enjoining appellant as trustee under the debtor's First Terminal and Unifying Mort-

gage from accelerating the maturity of the bonds outstanding thereunder. One appeal was allowed by this court, while the other was allowed by the lower court; but they have been consolidated by order of this court.

On December 12, 1935, the St. Louis Southwestern Railway Company filed in the United States District Court for the Eastern District of Missouri a petition alleging that it was unable to meet its debts as they matured, and that it desired to effect a plan of reorganization pursuant to section 77 of chapter 8 of the Bankruptcy Act, 47 Stat. 1474, as amended by 49 Stat. 911 (Title 11 U.S.C.A. § 205 and note) On the same day, the court entered an order approving the petition as properly filed, and on December 31, 1935, after a hearing on issues raised by creditors, a further order of like import was entered. Berryman Henwood was appointed trustee of the debtor's property, qualified as such, and entered upon the discharge of his duties.

On April 11, 1936, Berryman Henwood, as trustee of the debtor, St. Louis Southwestern Railway Company, filed a petition praying that appellant, Guaranty Trust Company of New York, as trustee under St. Louis Southwestern Railway Company First Terminal and Unifying Mortgage dated January 1, 1912, be temporarily restrained and enjoined from declaring to be due and payable immediately the principal of all the First Terminal and Unifying Mortgage bonds outstanding under the mortgage, and requesting that the appellant as trustee be ordered to show cause why such an injunction should not be issued. On the same day the court entered a meantime restraining order and a show cause order returnable April 21, 1936.

The petition alleges the contemplated declaration that the whole of the First Terminal and Unifying Mortgage bonds will be declared due in the immediate future, because of the existence of one or more of the events of default. It alleges that such acceleration of the maturity might fix the rate of exchange in regard to payment of said bonds and interest coupons in the currencies of England, Holland, Germany, and France, and thereby establish the amount of the ultimate liability of the debtor with respect to the bonds and interest coupons, all in conflict with the provisions, purpose, and intent of section 77, and in derogation of the interests of other creditors of the debtor, and

that such acceleration might, and in all probability would, create a number of different classifications of bondholders, contrary to the provisions, purpose, and intent of section 77; that if acceleration of the maturity of the First Terminal and Unifying Mortgage bonds were permitted, other mortgagee trustees would undoubtedly take similar action under similar clauses contained in other mortgages of the debtor; that the acceleration of the maturity of the First Terminal and Unifying Mortgage bonds might unnecessarily give rise to a claim or claims for a different rate of interest, predicated upon such action, than the rate of interest otherwise applicable, and might unnecessarily give rise to a claim or claims for interest upon overdue interest; that the acceleration would result in a discrimination in favor of the holders of bonds secured by the First Terminal and Unifying Mortgage and against the holders of other securities of the debtor, as well as against other creditors of the debtor; that the effect which would be wrought by the menace of the confusion which would result inevitably from acceleration would seriously embarrass, and probably prevent, the formulation and consummation of a plan of reorganization, and would require such provisions in detail in the plan of reorganization, entailing new and perhaps difficult reconcilements of views among many and conflicting interests, as to force an abandonment of the proceeding; without the maintenance of the status quo for a reasonable length of time, no satisfactory plan of reorganization can be worked out; no plan has yet been submitted by the debtor, but a plan will be submitted, and to allow at this time the acceleration of the maturity of any of the debtor's bonds would hinder, impede, obstruct, delay, and in effect prevent, the orderly preparation and consummation of such plan.

Appellant made answer and return to the order to show cause in which the facts with reference to the bonds and mortgage, and the reorganization proceedings were admitted. It denied the statement in the petition to the effect that acceleration of the maturity of the bonds would hinder, delay, or defeat the consummation of the plan of reorganization, and denied the power of the court to enjoin it from declaring the principal of the bonds immediately due and payable. It also filed an affidavit in which it was stated that "due to the impending general elections in

France on or about April 26, 1936, to the close community of interest between the currencies of the so-called 'gold bloc' countries, which include the Netherlands and France, and due to the international situation generally, there is grave danger that the guilder may soon be devalued in which event it may become worth in the markets of the world, particularly in the United States of America, much less than its present value of approximately 68 cents; that if the restraining order against the Guaranty Trust Company of New York be not immediately dissolved, the rights of all the owners and holders of the First Terminal and Unifying Mortgage bonds may be seriously and irreparably impaired."

On the hearing of this petition, no oral evidence was introduced, and the basic facts are undisputed, and the conflict between the parties arises from the different inferences and conclusions which the respective parties urge as flowing from these undisputed facts. The lower court made findings of fact and conclusions of law in which it adopted the theory of the petition that acceleration would hinder and embarrass the formulation and consummation of a plan of reorganization, and would result in depriving the court of the rights, powers, and duties granted to it by section 77. It accordingly entered an order enjoining appellant "during the pendency of this proceeding, or until further order of this court, from declaring the principal of any or all of St. Louis Southwestern Railway Company First Terminal and Unifying Mortgage Bonds now outstanding to be due and payable immediately, either by voluntary action by Guaranty Trust Company of New York, as Trustee, or upon the written request of the holders of the requisite percentages in amount of said bonds under said mortgage." The order provides that, "upon the filing of a bond, approved by the court, in the sum of $1,000.-00, a writ of injunction shall issue in accordance herewith." It is from this order that the trustee in the mortgage, the Guaranty Trust Company, prosecutes this appeal.

It is the contention of appellant that the lower court had no power to issue the injunction, and that there was no proper basis for it in the record.

From the petition, the appellant's return and answer thereto, and the findings of fact made by the lower court, the following facts appear: Shortly prior to April 24, 1912, pursuant to proper corporate action, the debtor authorized an issue of its bonds to be known as its First Terminal and Unifying Mortgage bonds. The bonds so issued and outstanding under said mortgage amount to $21,638,000 principal. The bonds are due January 1, 1952, with semiannual interest coupons attached. The provision for payment of money contained in the bonds is as follows: "One thousand Dollars in gold coin of or equal to the standard of weight and fineness as it existed January 1, 1912, or in London, England £205 15 s 2 d, or in Amsterdam, Holland, 2490 guilders, or in Berlin, Germany, marks 4200, D.R.W., or in Paris, France, 5180 francs." The interest coupons are payable in the same terms.

The guilder is the monetary unit of the Netherlands, and at the time of filing defendant's return was worth about 68 cents in United States money, so that the 2,490 guilders which a bondholder may elect as an alternative to $1,000 principal amount, are worth about $1,693.

The lien of the First Terminal and Unifying Mortgage is subordinate to a first mortgage with a total of $20,000,000 outstanding trustee's certificates, and a second mortgage with a total of $10,000,-000 outstanding trustee's certificates. It covers practically the entire railway system of the debtor and its subsidiaries except certain branch lines in Southeast Missouri and Northeast Arkansas.

Each bond contains provision that: "In case an event of default, as defined in the First Terminal and Unifying Mortgage shall occur, the principal of the First Terminal and Unifying Mortgage Bonds may become or be declared due and payable, in the manner and with the effect provided in the said First Terminal and Unifying Mortgage."

The mortgage provides that default shall consist, among other things, in failure to pay any installment of interest on any of the bonds when and as the same shall become due and payable, and the continuance of such default for the space of three months. Default also consists in a similar failure to pay interest on any debt secured by a lien prior to that of the First Terminal and Unifying Mortgage. The mortgage provides that if any one or more of the events of default shall have happened, unless the principal of the bonds shall have become due already, the trustee in the mortgage may, and upon written re-

quest· of the holders of 25 per cent. in amount of the bonds then outstanding shall,· declare the principal of all the bonds then outstanding due and payable immediately, "and upon any such declaration the same shall become and be immediately due and payable."

The debtor failed to pay the interest due January 1, 1936, upon the First Terminal and Unifying Mortgage bonds, and also the interest falling due on the same date on the debt secured by a prior mortgage.

 Provision that a default in the payment of an installment of interest shall make the whole indebtedness due at the option of the payee is not uncommon in instruments of indebtedness. Such a stipulation is recognized as a proper matter of contract by which the debtor may be bound because, on the faith of such agreement, his creditor has been induced to part with his property. Equity will not ordinarily enjoin the exercise of the option by the creditor, as such a case does not fall within any applicable principle upon which relief against forfeiture is sometimes granted. Whitcher v. Webb, 44 Cal. 127; Morling v. Bronson, 37 Neb. 608, 56 N.W. 205. The debt is provable in bankruptcy in its entirety, although the contingency of default in payment of interest and the exercise of the option to declare the whole debt due may not have occurred until after the filing of the petition and the adjudication. In re Paramount Publix Corporation (C.C.A.2) 72 F.(2d) 219.

The meaning of the terms "creditor" and "claim," as used in section 205, may be gathered from the context of the act itself. Section 1 (9) of the act (11 U.S.C.A. § 1 (9) defines "creditor" as "anyone who owns a demand or claim provable in bankruptcy." "Debt" is defined as including "any debt, demand, or claim provable in bankruptcy." Section 103 (a), title 11 U. S.C.A., Bankr.Act, § 63a, as amended by Act of June 7, 1934, c. 424, § 4 (a), 48 Stat. 923, and June 18, 1934, c. 580, 48 Stat. 991, provides in part as follows: "Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest."

This provision has been in the same form since the enactment of the act of 1898 (Act of July 1, 1898, c. 541, § 63a, 30 Stat. 562). Under it a claim against the bankrupt indorsers of promissory notes payable to the proving creditors was held a provable claim, although not due at the time. The Supreme Court, in Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 392, 75 L.Ed. 1028, held that the amount of liability of an endorser "is certain; and the contingency of notice of dishonor to the indorser is within the control of the creditor, so as to place his claim, so far as its certainty of accrual and its susceptibility of liquidation are concerned, upon the same footing as the contract of indemnity which was held provable in Williams v. United States Fidelity & G. Co., supra [236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713], although the claimant had done nothing at the time of the bankruptcy to satisfy the liability for which the indemnity was given."

The context of section 205 persuades that much greater liberality of construction is required. It provides (subdivision (b) that "the term 'creditors' shall include, for all purposes of this section all holders of claims of whatever character against the debtor or its property, whether or not such claims would otherwise constitute provable claims under this Act, including the holder of a claim under a contract executory in whole or in part including an unexpired lease." By the same paragraph, the term "claims" is made to include "debts, whether liquidated or unliquidated, securities (other than stock and option warrants to subscribe to stock), liens, or other interests of whatever character."

It is important to bear in mind that the question of the enforcement of the mortgage lien is not here involved. In Anglo-Continentale Treuhand, A. G., v. St. Louis Southwestern Ry. Co., 81 F.(2d) 11, 105 A.L.R. 636, the Circuit Court of Appeals of the Second Circuit had before it an ·action to recover upon interest coupons attached to negotiable bonds secured by this same mortgage and containing the same provisions with reference to terms of payment. In the course of the opinion it is said: "The only question is whether the damages recoverable in dollars in this action are to be calculated at the gold par of the guilder, or at the rate of exchange pre-

vailing in New York at the time of judgment."

In answering this question the court held that plaintiff was entitled to recover in dollars calculated at the gold par value of the guilder, and not at the rate of exchange prevailing in New York at the time of judgment.

■ The court of bankruptcy in a reorganization proceeding may by injunction delay enforcement of a remedy given a secured creditor for a reasonable time, if to allow him to proceed with an immediate sale would interfere with the reorganization proceeding. Continental Ill. Nat. B. & T. Co. v. Chicago, Rock Island & P. R Co., 294 U.S. 648, 55 S.Ct. 595, 600, 79 L Ed. 1110; United States Nat. Bank v Pamp (C.C.A.8) 83 F.(2d) 493. We think it is clear that the acceleration clause in these bonds grants, not a mere remedy to the creditor, but a substantive right.

■ Appellee places great reliance on the Rock Island Case, but in that case the Supreme Court pointed out that the injunction went no further than to delay enforcement of the contract of pledge; it affected only the remedy. In the exercise of its power to grant an injunction against a secured creditor, restraining him from pursuing a remedy otherwise available, the discretion vested in the trial court is a judicial discretion. If its discretion is improvidently exercised, its action will be reversed. Continental Ill. Nat. B. & T. Co. v. Chicago, R. I. & P. R. Co., supra; Brockett v. Winkle Terra Cotta Co. (C. C.A.8) 81 F.(2d) 949.

In the Rock Island Case, the facts upon which the secured creditors were enjoined from selling their collateral may be summarized as follows: The debtor had outstanding collateral notes, secured by mortgage bonds, some parts of which were issued by it, others by the corporations forming part of the system, but which were guaranteed by the debtor. The value of the collateral securing each of the outstanding notes was substantially in excess of the debts thereby secured. Six collateral notes aggregating $13,659,877.58 were held by the Reconstruction Finance Corporation, and were secured by collateral of the face value of $41,702,465.85. The remaining notes, aggregating $4,125,000, were held by five banks and were secured by collateral of the face value of $14,409,-000. At the commencement of the reorganization proceedings, the capitalization of the debtor outstanding in the hands of the public was $459,059,808, of which $128,909,211 was in preferred and common stocks, $312,365,720 in bonded indebtedness, and $17,784,877 in the collateral notes mentioned. These were pledged as security for some issues of its funded debt bonds and stocks of the debtor aggregating $145,749,050, in addition to the collateral amounting to $54,711,465 pledged to the Reconstruction Finance Corporation and the five banks. In these circumstances the Supreme Court said: "If, pending the reorganization, trustees for the bondholders and these noteholders should sell the pledged securities, the capitalization outstanding in the hands of the public would to that extent be expanded; and the aggregate capitalization might thereby become as much as $659,520,323."

The court held that the exercise of the right of sale of collateral by one creditor might well precipitate similar action by other holders of other pledged collateral, and recurring sales of collateral would in turn make it impossible to formulate and bring to consummation a plan of reorganization; the sale of collateral securities from time to time during the progress of its consideration by stockholders, creditors, the Interstate Commerce Commission, and the court, might so change details, entailing new and perhaps difficult reconcilements of views among many and conflicting interests, as to force an abandonment of the proceeding. It was essential to preserve the status.

The doctrine of that case has no application here. In that case, creditors were not prevented from proving the amount of their claims. Manifestly, the creditors, the Interstate Commerce Commission, and the court must consider the amount due creditors in determining whether to approve a proposed plan.

One of the purposes of the Bankruptcy Law, prior to the enactment of the reorganization or composition and extension statutes, was to place the property of the bankrupt, wherever found, under the control of the court for equal distribution among creditors. Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060. Another purpose was to give the debtor a discharge from his obligations. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; Central Trust Co. v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, L.R.A.

1917B, 580. In section 205, in lieu of a sale of assets of the bankrupt, a distribution of the proceeds to creditors, and a discharge of the honest debtor, there is "an adjustment of a failing debtor's obligations," and, upon approval of the plan, the debtor is "discharged from its debts and liabilities, except such as may consistently with the provisions of the plan be reserved in the order confirming the plan," or in the order of transfer and conveyance of the debtor's property or retention of property by it. Subdivision (f). There is no departure in section 205 from the prior theory of the Bankruptcy Act that one of its main purposes was to permit creditors to share in the assets of the bankrupt. To be sure, the method of accomplishing that purpose is changed. In a proceeding under section 207, title 11 U.S.C.A., the court, in Re Rosenbaum Grain Corporation (C.C. A.7) 83 F.(2d) 391, 394, said: "Where discretion is involved and is to be exercised, creditors are entitled to first consideration by the court of bankruptcy."

To deny a creditor the right to prove a claim is not only opposed to the theory of Bankruptcy Law, but is clearly contrary to the express provisions of section 205. Paragraph (7) of subdivision (c) of this section provides that the judge shall promptly fix a time within which the claims of creditors may be filed or evidenced, and after which no claim not so filed or evidenced may participate except on order for cause shown; that he shall determine the manner in which the claims may be allowed. The paragraph also provides that: "The trustee or trustees under any mortgage, deed of trust, or indenture outstanding against the property may, within the time prescribed, file a verified claim in behalf of all bonds or securities outstanding under such mortgage, deed of trust, or indenture, in which event it shall be unnecessary for the holders of such bonds or securities to file claims in their own behalf." Paragraph (8) of this same subdivision provides for reasonable notice of the period in which claims may be filed.

These provisions make it the duty of the judge not only to allow claims to be filed, but reasonably to expedite the exercise of this right. Those who do not file claims within the time limited by the court may be barred from participation. It is inconsistent with these express statutory provisions to enjoin a creditor from filing a claim, and in the instant case the amount

of the creditor's claim can only be determined by permitting it to exercise its contract right of acceleration. The injunction must result in delay, whereas delay is expressly inhibited by the provisions of subdivision (g), section 205. Proceedings of this character should be "speedily determined." Continental Ill. Nat. B. & T. Co. v. Chicago, Rock Island & P. R. Co., supra.

It is clear that the injunction in this case does not, as in the Rock Island Case, promote the preparation and consummation of a plan of reorganization, but actually brings it to a standstill. No intelligent action of a final nature can be taken in this proceeding until the claims of creditors under the First Terminal and Unifying Mortgage bonds are fixed in amount. The promise to pay is in several alternatives, and it cannot be known definitely what the amount due on these bonds is until the claims are filed and approved. The plan of reorganization must include provisions "modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise," and it may include "for the purpose of preserving such interests of creditors and stockholders as are not otherwise provided for, provisions for the issuance to any such creditor or stockholder of options or warrants to receive, or to subscribe for, securities of the reorganized company in such amounts and upon such terms and conditions as may be set forth in the plan." Subdivision (b) also requires that the plan of reorganization shall provide adequate means for its execution, including the sale of all or any part of the property of the debtor, either subject to or free from any lien, at not less than a fair upset price, the distribution of all or any assets, or the proceeds derived from the sale thereof, among those having an interest therein, the reduction in principal of securities, the issuance of securities of either the debtor or any other corporation or corporations formed to carry out the plan, in exchange for existing securities.

As has been observed, paragraph (7), subdivision (c), provides for the filing of claims of creditors and that claims not filed or evidenced as required by the judge shall not participate, except on order for cause shown; and paragraph (8) provides that the judge shall cause reasonable notice to be given of the period in which claims may be filed. Subdivision (d) requires the

debtor to file a plan of reorganization within six months of the entry of the order of the judge approving the petition for reorganization, unless the time is extended by the judge. Plans may be filed by other interested parties, including not less than 10 per centum in amount of any class of creditors. Subdivision (e) provides that after approval of the plan by the Interstate Commerce Commission, the judge shall approve the plan, if satisfied that, among other things, it affords due recognition of the rights of each class of creditors and stockholders, and will conform to the law of the land regarding the participation of the various classes of creditors and stockholders. If the judge approves the plan, he shall send a certified copy of his opinion and order to the Interstate Commerce Commission, and the Commission must then, with certain exceptions, submit the plan to the creditors of each class whose claims have been filed and allowed (as well as to others) for acceptance or rejection.

It is not only important but essential that the claims of creditors be filed and passed on by the court. Rights of creditors and stockholders may be altered by the plan, property that is encumbered may be sold free of liens, and distribution must be made to those having an interest in the proceeds. The rights of creditors and stockholders must be given due recognition by the plan. The question that will confront the court in many respects will be a business question. Equitable adjustments and proper recognition of conflicting interests can be made only if the investments of stockholders and the amounts of claims of creditors are before the court. It is beside the question to contend that the court should consider the extent of the lien whether the claim or claims are filed or not. If the creditor in fact has a right, he should not have substituted for it the mere possibility that it will be protected without his active participation in the proceedings. The trustee of the debtor is contending that confusion, embarrassment, and delay must follow if the injunction is not sustained; but if the court must, in approving a plan, consider the indebtedness secured by the First Terminal and Unifying Mortgage, whether a claim for the full amount is filed or not, then the injunction would appear to be a futile thing, serving no purpose, and meaningless.

Ten per cent. in amount of any class of creditors may file a plan for approval, and enjoining the appellant (or the various bondholders) from accelerating the principal of the bonded debt deprives the bondholders of the right to prove their claims except for the relatively small amount of interest, and diminishes materially their representation in amount, either in the necessary 10 per cent. required to propose a plan, or the other 90 per cent.

■ There comes a time in the proceedings when a plan is to be submitted "to the creditors of each class whose claims have been filed and allowed in accordance with the requirements of subsection (c)" and to stockholders and committees (subdivision (e) for their acceptance or rejection. The right to participate in the acceptance or rejection of the plan is, of course, a valuable right, a denial of which deprives of substantial rights. In the instant case the injunction obstructs and delays the proceeding, and delay without good cause therefor is contrary to the spirit and express provisions of the statute. If this injunction properly issued, then no reason occurs to us why it should be dissolved at any time. Courts of bankruptcy are essentially courts of equity (Continental Ill. Nat. B. & T. Co. v. Chicago, R. I. & P. R. Co., supra), and without substantial cause and sound reason should not impede, but should promote and facilitate, the participation of creditors in the proceedings.

■ General allegations in a complaint or in affidavits stating the judgment, opinion, or conclusion of the pleader are insufficient as a basis for an injunction. Louisville & N. R. Co. v. Garrett, 231 U. S. 298, 34 S.Ct. 48, 58 L.Ed. 229. Appellee had the burden of proof to show the necessity for an injunction, and this could only be sustained by competent, material, and credible evidence. Facts, not conclusions or opinions, must be stated upon which the court may base its judgment, according to established principles governing equitable relief by injunction. Indian Land & Trust Co. v. Shoenfelt (C.C.A.8) 135 F. 484; Nottebaum v. Leckie (C.C.A. 3) 31 F.(2d) 556; Curtis Pub. Co. v. Federal Trade Commission (C.C.A.3) 270 F. 881; Great Northern Ry. Co. v. Local Great Falls Lodge (D.C.Mont.) 283 F. 557; Behre v. Anchor Ins. Co. (C.C.A.2) 297 F. 986; Ashburn v. Graves (C.C.A.5) 149 F. 968; High on Injunctions (4th Ed.) § 34.

Applying this rule to the petition on which the injunction is based, it is observed that the petition states the facts as to the mortgage, the bonds, and the reorganization proceedings. Aside from these, no other facts are stated on which the injunction can properly be based. True, the pleader alleges that in his opinion acceleration *might* fix the rate of exchange in regard to payment of the bonds in the currencies of England, Holland, Germany, and France, and thereby establish the amount of the ultimate liability of the debtor with respect to said bonds and interest coupons, all in conflict with the provisions, purpose, and intent of section 77, and in derogation of the interests of other creditors of the debtor, and that acceleration *might,* and in all probability would, create a number of different classifications of bondholders having different and varied claims, contrary to the purpose and intent of section 77. He also alleges that acceleration of maturity *"might* unnecessarily give rise to a claim or claims for a different rate of interest otherwise applicable, and *might* necessarily give rise to a claim or claims for interest upon overdue paper; that acceleration would result in a discrimination" (italics supplied), and alleges that there would be embarrassment and probably prevention of the formation of a plan of reorganization. These are taken as illustrative of the conclusions and opinions of the pleader, as distinguished from facts upon which the trial court was asked to act and on which the court did act, adopting these conclusions in its findings of fact; but these inferences and conclusions are not warranted from the basic facts, and as has been pointed out, are at variance with the express purpose and spirit of the Bankruptcy Act, including the recently enacted section 205, title 11 U.S.C.A.

There is no escape from the conclusion that creditors should be permitted to file their claims, and the court with reasonable dispatch should proceed to a hearing on them if contested. The difficulties suggested in the matter of the allowance of claims, whether real or imaginary, present no grounds for equitable interference. Certainly, other creditors cannot be harmed by the filing of a claim. If the claim is just, the creditor should be permitted to enjoy to the fullest extent the right of participation. If the claim is unjust, or its validity challenged, there is the right to a hearing in which all parties interested may be heard and in which the court may do full justice. There is no basis for the contention that the jurisdiction of the court would be impaired by acceleration. The filing of claims and the allowance or disallowance thereof are among the necessary functions of a court of bankruptcy. No persons, property, or controversies subject to its jurisdiction would to any extent be removed therefrom if the debt were accelerated.

We put aside as unnecessary for consideration appellant's contention that the whole debt became due and payable when proceedings under section 205 were instituted, without reference to the acceleration clause.

The appeal in this case is from an order made in a controversy in bankruptcy. In re Tracy (C.C.A.7) 80 F.(2d) 9; In re Lowmon (C.C.A.7) 79 F.(2d) 887. As such it was properly allowed by the District Court. The appeal allowed by this court is therefore dismissed and the order appealed from is reversed, and the cause is remanded to the lower court with directions to dissolve the injunction so improvidently granted, to dismiss the petition, and grant leave to appellant to give the notice which it was enjoined from giving, such notice to be effective as of the date when the injunction was granted, if the appellant shall so elect.