In re .DENVER & R. G. W. R. CO.

No. 8669.

District Court, D. Colorado.

May 3, 1938.

Byron G. Rogers, Atty. Gen., State of Colorado, Henry E. Lutz, Asst. Atty. Gen., State of Colorado, Thomas H. Gibson, Asst. City Atty. of City and County of Denver, Colo., Jerome A. Paul, Co. Atty. of Ouray County, of Ouray, Colo., and J. Fred Schneider, Co. Atty. of Grand County, of Denver, Colo., for County Treasurers.

Henry McAllister and Thomas R. Woodrow, both of Denver, Colo., for Trustees of Denver & R. G. W. R. Co.

SYMES, District Judge.

The court has before it the petition of the trustees filed March 5, 1938, relative to the assessment and taxes levied against the debtor's property in Colorado for 1937. The trustees ask the court to hear and determine certain questions in respect thereto and that in the meantime they be authorized to refrain from paying any taxes in Colorado for 1937.

The petition sets forth that the power to assess all railroads in Colorado is vested solely in the Colorado Tax Commission, '35 C.S.A. c. 142, § 107, which is required to certify to the several county assessors, on or before June 15th of each year, the amount and value of the debtor's property assessed by the Commission and the amount thereof within each county. That the Commission thus determined the true and full cash value of the debtor's property within the state for 1937 at $28,927,770. The method followed by the Commission is recited in detail. That the evidence considered was the average of the market value of the debtor's capital stock and bonds for the five-year period 1932 to 1936, inclusive, allocating to Colorado the proportion of the average value the railroad's mileage in Colorado bore to its total mileage; that it also took into account the net earnings of the system for the five-year period capitalized at seven per cent.; and after considering all the factors required and permissible under the statute, the Commission arrived at a valuation of $21,062,669, which the trustees say is the true and actual value. That the Commission, however, without right of law considered the average assessed valuation of the debtor's property for the said five-year period, to wit, $35,440,418, and averaged this with the twenty-one million odd thousand dollar figure (supra), and arrived at $28,251,533, which, with some minor adjustments, gave $28,927,770. That said assessment was protested, but after a hearing the same was denied and said amount was distributed and certified to the various counties.

Reference is then made to section 15, art. 10 of the Colorado Constitution creating the Board of Equalization, consisting of five elective state officers, empowered to adjust, equalize, raise, or lower the valuation of real and personal property, or the valuation of any item or items of the various classes of such property, etc. That the said Board of Equalization duly met and over the protest of the trustees raised the assessment as returned by the Tax Commission 20 per cent., to $34,713,324 and certified the same to the respective county treasurers; and that said county treasurers will endeavor to collect taxes on said increased valuation. That the said 20 per cent. increase increases the tax demanded of the debtor from $938,632.71 to $1,126,358.44, an increase of $187,725.73.

The trustees represent to the court that they have been advised by counsel that the action of the State Board of Equalization increasing the assessment against their trust estate is illegal, unconstitutional, and invalid for the following reasons:

1. That the Board of Equalization has no jurisdiction whatever over utilities. That the Tax Commission is the sole authority as respects them.

2. That the Board of Equalization in effect made an original assessment without authority.

3. That the assessment is more than the full cash value.

4. That the Board acted without proper knowledge or information.

5. That the Board's action results in casting a greater burden than a fair and equitable share of taxation on petitioner and violates section 3, art. 10 of the State Constitution, and the Constitution of the United States, article 1, § 8, cl. 1.

The trustees represent that the interests of the debtor and creditors require the amount of taxes payable for 1937 be determined without delay. That the

amount in dispute, $187,725.73, constitutes a cloud upon the debtor's estate, the removal of which is a necessary step to reorganization, etc.

Upon the filing of this petition an order was made directing service thereof upon the treasurers of the 33 different counties affected. A joint motion to dismiss the petition on behalf of 27 counties was filed by the Attorney General and a like motion by Ouray county. The counties have not sought to intervene, are not parties to the proceeding, so strictly speaking, the motions are not before the court. At the special request of the court, however, Mr. Lutz, for the Attorney General, and Mr. Paul of Ouray, have appeared, made arguments, and filed exhaustive briefs.

Section 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205, provides that if a petition filed by a railway debtor is approved—(a) "the court * * * shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose." And (l) "In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered * * *."

See, also, section 77A, Bankr.Act, 11 U.S.C.A. § 206.

■ This language, though a new and further extension of the bankruptcy power, is well within the constitutional grant of bankruptcy power. Const.U.S. art. 1, § 8, cl. 4.

■ The one branch of federal jurisdiction that is all-embracing and exclusive is bankruptcy. Such has always been the holding of the Supreme Court. Its latest expression is Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L. Ed. 1110. It states (page 605): "That

section 77, in its general scope and aim, is within the power conferred by the bankruptcy clause of the Constitution." And that the mere fact that Congress under this clause may deal with new subjects and new conditions arising in the body politic in a new way is immaterial because the bankruptcy power is adaptable to new conditions and the interpretation of the power has been progressively liberal. Further, that section 77, bringing railroads within the operation of bankruptcy for the first time with the object of reorganizing or selling them as a unit and as a going concern, is only a step in the direction of liberalizing the bankruptcy law. This because their continuous uninterrupted operation is necessary in the public interest, and a reorganization as contemplated by this section is not distinguishable in principle from a composition with creditors. That section 77, like other provisions of the act, contemplates an adjustment of a failing debtor's obligations and, "although actual bankruptcy may not supervene in either, they are none the less laws on the subject of bankruptcies."

Section 64(a) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 104(a), is one of the administrative provisions. It directs the court to order the trustee to pay all taxes legally due by the bankrupt to the United States, state, county, district, or municipality, etc., "and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court." In construing this language the Supreme Court in State of New Jersey v. Anderson, 203 U.S. 483, at page 493, 27 S.Ct. 137, at page 141, 51 L.Ed. 284, which involved a tax dispute, said: "But we do not think the finding of the state board is conclusive. * * * But be that as it may, § 64a specifically provides that in case any question arises as to the amount or legality of taxes, the same shall be heard and determined by the court, with a view to ascertaining the amount really due."

In Henderson County v. Wilkins, 4 Cir., 43 F.2d 670, the question was whether certain property had been properly valued for the purposes of taxation and the Circuit Court of Appeals for the Fourth Circuit said (page 671): "It is well settled that in determining such a question the court is not concluded by the findings of

the taxing authorities." Citing numerous authorities. And: "Its action is not a review of the action of the taxing authorities or a proceeding to enjoin action by them, but a determination under the statute of the amount which should be paid on the claim for taxes from the assets of the estate in its possession."

And in Board of Directors of St. Francis Levee Dist. v. Kurn, 91 F.2d 118, certiorari denied, 58 S.Ct. 272, 82 L.Ed. —— (a section 77 proceeding by the way), the Circuit Court of Appeals of the Eight Circuit upheld the District Court in restraining the prosecution in the state court of six suits brought by the levee district for the collection of levee taxes, collectible according to the state statute by suits in chancery, holding that section 265 of the Judicial Code, 28 U.S.C.A. § 379, prohibiting injunctions restraining proceedings in state courts, except as authorized by any law relating to bankruptcy, does not prohibit such an injunction. That the suits were judicial proceedings to enforce a lien, and the question of the amount and validity of tax liens was for the bankruptcy court. The opinion called attention to the provision of section 77(j), as amended, 11 U.S.C.A. § 205 (j), empowering the judge to stay the commencement and continuation of the suits against the debtor, etc., and any judicial proceeding to enforce any lien upon the estate until after final decree. A holding consonant with Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. R. Co., supra.

Among the many other cases arriving at the same result are In re Fisher Corporation, D.C., 229 F. 316; Dickinson v. Riley, County Treasurer, 8 Cir., 86 F.2d 385; In re Thermiodyne Radio Corporation, D.C., 26 F.2d 716; City of Springfield v. Hotel Charles Company, 1 Cir., 84 F.2d 589; In re Florence Commercial Company, 8 Cir., 19 F.2d 468; Scott v. Western Pac. R. R. Co., 9 Cir., 246 F. 545.

■ Answering another contention of the Attorney General, Remington on Bankruptcy, 3d Ed., vol. 6, § 2804, states the bankruptcy court is the forum for the determination of the validity of taxes and all questions in relation thereto, saying: "It is not necessary for the trustee to first pay the taxes and then file an application for a refund thereof; nor may the tax commissioner make rules and regulations depriving the bankruptcy court of the power to pass on the validity of tax claims." See, also, Florence Commercial Co., supra; Gilbert's Collier, 4th Ed. § 1292, p. 1014. But, it is contended, section 64a, as amended, 11 U.S.C.A. § 104(a), does not apply to section 77 proceedings, for the reason that section 77 makes no reference to it and no general bankruptcy powers are conferred in connection with that section.

As already pointed out, section 77 is bankruptcy; an integral part of the act, made so by its very provisions. See 11 U.S.C.A. § 205(*l*). We fail to find anything inconsistent with the application we have made.

■ The proviso in paragraph (k) of section 77B, 11 U.S.C.A. § 207(k), limiting the application of section 64(a) to proceedings after an order of liquidation has been made that counsel relies upon, is not contained in section 77. The omission is significant and indicates, we think, the intent of Congress to confine the proviso to section 77B cases only. Such seems to be the holding of the two cases cited, Hotel Charles Co., Bankrupt, v. City of Springfield, 1 Cir., 84 F.2d 589, and In re A. V. Manning's Sons, D.C., 16 F.Supp. 932.

■ No court can countenance without compelling cause the nonpayment of taxes legally owing by debtors under its exclusive jurisdiction, especially where, as here, the debtor is the largest taxpayer in the state. Any delay is a serious matter to the state, counties and school districts, directly impairing their functions. As Judge Phillips has stated in Re De Angeles, 10 Cir., 36 F.2d 218, 219:

"It is the duty of the trustee to search for taxes and pay those which are legal. * * *

"The referee has authority, however, to examine tax claims and to pass upon their validity and amount."

On the other hand, regard must be had to the fact that this railroad is a public utility rendering transportation service of paramount importance and most vital to the business, industrial, and farming interests of the state. This property was undermaintained for many years previous to this court taking jurisdiction and its ability to perform its public duty greatly impaired. This required and justifies the extensive rehabilitation program heretofore authorized and now being carried out

302

by the trustees. For this purpose all available earnings, as well as $7,175,000 net of borrowed money, has been expended. Since the appointment of the trustees, federal, state, and other taxes, over which they have no control, have increased over $800,000, wages, $1,200,000, and costs of materials and coal .10 per cent. All this, with a sharp decrease in business and gross receipts, has produced a financial situation that has required postponement of part of the rehabilitation program, the discharge of many employees, and the cancellation of orders for material.

Without expressing any opinion on the questions raised, we find them sufficiently substantial both on the facts and law to require settlement in the manner prescribed (supra). Counsel are requested to consult with the court as to procedure. If the questions are of law only, the matter can be set down for argument at the earliest convenient date. But if it is necessary to take testimony, the court is disposed to refer it to a master, with directions that hearings begin forthwith and continue without interruption. In the meantime the trustees will refrain from paying any taxes in Colorado.