In re ERIE R. CO.

**CITY OF YOUNGSTOWN v. ERIE R. CO.**
**No. 9253.**

Circuit Court of Appeals, Sixth Circuit.
Feb. 19, 1943.

I. Freeman, of Youngstown, Ohio (John A. Willo and I. Freeman, both of Youngstown, Ohio, on the brief), for appellant.

William T. Swanton, of Youngstown, Ohio (Manchester, Bennett, Powers & Ullman, William T. Swanton, and M. S. Wilkison, all of Youngstown, Ohio, on the brief) for appellee.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

HICKS, Circuit Judge.

The Erie Railroad Company is in process of reorganization under Sec. 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. This appeal is from an order confirming a report of a special master denying a claim of the City of Youngstown, Ohio, against the Railroad. This claim was for an amount contingent upon the outcome of an action for damages against the City by the Ma-

honing National Bank. The City and the Railroad had embarked upon a joint project for the abolition of certain grade crossings under a decree of a common pleas court authorized by Secs. 8868 and 8883 of the General Code of Ohio. The cost of construction including "all damages arising therefrom" were ordered to be borne, 65% by the Railroad, and 35% by the City. This decree was entered on September 8, 1922, and covered the abolition of a crossing at North Watt Street. The Railroad was ordered to acquire the necessary lands for the change of grade and the City was ordered to acquire the right to change the grade of the street. It was further ordered "that the City of Youngstown shall have charge of all claims for damages growing out of said improvement. * * *"

On December 21, 1928, the Standard Plate Glass Company, owner of Lot No. 412 and the building thereon situated on the westerly side of North Watt Street and immediately south of the tracks of the Railroad, brought an action in the Common Pleas Court against the City for damages resulting from the change of grade of the street in front of its premises and on December 28th following the court entered a decree ordering the City to compensate the Glass Company for the following items of damage, to wit, $16,000 for damage to the land, and $31,000 for damage to the building. The City paid the Glass Company's judgment and the Railroad reimbursed it for 65% of the $47,000 paid.

On September 10, 1925, the then owners of the property mortgaged it for $36,000 to the Mahoning Savings & Trust Company and the mortgage was duly recorded. Subsequently, the Standard Glass Company became the owner of the property subject to the mortgage and erected a building thereon. The Mahoning National Bank, successor to the Mahoning Savings & Trust Company, became the owner of the mortgage, which was an incumbrance upon the property when the Railroad paid its share (65%) of the Glass Company's judgment.

Thereafter, in July 1932, the Bank as holder of the mortgage, began an action against the City to recover damages for the impairment of its security due to the taking of the property. It is unnecessary to set out the course of this litigation. It is sufficient to say that the suit has not been terminated.

In July 1934 the Bank instituted a suit against the Glass Company to foreclose its mortgage. This suit resulted in a decree in favor of the Bank and the premises were sold at public sale in April 1938 to the Bank. Upon petition of the Bank these proceedings were partially vacated and leave was granted to the Bank to file an amended petition and make new parties defendant.

This second proceeding, although maintaining its character as a foreclosure, joined the City and Railroad as respondents, it being charged that when the City paid the Glass Company the $47,000, the Bank was not made a party to the proceedings, had no knowledge of them, was not notified of them as an owner of an interest in the premises, and that the City "wrongfully and negligently paid all of said sum to the" Glass Company "to the irreparable injury and damage of this plaintiff."

In this proceeding the City, in a duly verified answer, admitted the fact of the Glass Company's suit for damages and "that the court awarded judgment for the *total damages* resulting to the premises described * * * including the building thereon * * *, its abutments, approaches, and the change of grade in Watt Street, the taking of any portion of said land or building, and the value of any right incident to said property thereby taken, in the amount of $47,000.00. * * *" (Italics ours.) This admission was also stipulated by counsel at the hearing of the Bank's suit.

In the course of these foreclosure proceedings, both the Railroad and the City were dismissed as parties thereto, although for different reasons. As to the Railroad, the court commented that it was bound only to pay 65% of the cost of the improvements and damages, that it was the City's duty to make all disbursements and to see to their proper application, and if the City made a misapplication it only was liable. This decision, of course, is not binding upon us but it is of interest on the question of the validity of the City's claim against the Railroad in the reorganization proceedings.

Before the hearing in this court the City filed a motion to stay all proceedings upon its appeal until the final determination of its litigation with the Bank. The point of the motion is that if the City defeats the Bank, its claim against the Railroad necessarily fails; but if the Bank recovers, then the City is entitled to recover of the Railroad 65% of its claim.

The motion is denied. The validity of the City's claim against the Railroad

is not in issue in the state court action of the Bank against the City and in our view no purpose would be served in staying proceedings until final decision of that case. The Bankruptcy Court had jurisdiction to determine whether the City's claim was a legal obligation. See subdivision b(10) of Sec. 77, 11 U.S.C.A. § 205, sub. b(10); also City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 81 L. Ed. 324; Hippodrome Bldg. Co. v. Irving Trust Co., 2 Cir., 91 F.2d 753, 755; In re Radio-Keith-Orpheum Corp., 2 Cir., 106 F. 2d 22, 26.

The sole question here is, whether the City's claim against the Railroad is a valid one. The Bankruptcy Court is a court of equity and is guided by equitable doctrines and principles. Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281; Securities Comm. v. United States Realty Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293.

Under the court decree of Sept. 8, 1922, authorizing the grade crossing elimination, the City was expressly empowered to proceed according to law to acquire the right to change the grade of the street, and was expressly ordered to take "charge of all claims for damages growing out of said improvement." We think that under the facts found by the Master, which are in the main undisputed, that the Railroad was justified in assuming that its payment to the City represented "total damage" and that it was under no obligation to make a careful examination to determine for itself whether there were other claimants. The record is devoid of evidence that the Railroad knew that there were other claimants at the time it made its settlement with the City. The emergence of another claimant years later lays the City open to the charge that it was remiss in its original duty and obligation under the court's decree authorizing the project. The Master found that the City was aware of the Bank's mortgage even before it paid the Glass Company's judgment, but whether it knew of the mortgage or not, it, in the exercise of reasonable prudence in the discharge of its duty, should have known of it. A maxim relating to equitable adjudication, as old as equity itself, is, that "where one of two persons must suffer loss, he should suffer whose negligence occasioned the loss." This maxim is controlling here.

The order appealed from is affirmed.