## LYFORD et al. v. CITY OF NEW YORK.
### No. 300.

Circuit Court of Appeals, Second Circuit.
Aug. 6, 1943.

See, also, D.C.S.D.N.Y., 25 F.Supp. 709.

Paxton Blair, of New York City (Thomas D. Thacher, Corp. Counsel, Sol Charles Levine, and Bernard H. Sherris, all of New York City, on the brief), for appellant.

Elbert N. Oakes, of New York City, for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Pursuant to enabling legislation of the State of New York, the Municipal Assembly of the City of New York adopted local laws imposing taxes upon the gross revenue of certain utilities as therein defined, covering the period subsequent to September 1, 1933, the proceeds therefrom to be devoted exclusively to the relief of the needy unemployed.[1] On July 2, 1936, the city comptroller made an ex parte determination that New York, Ontario & Western Railway Company was indebted to the City for such taxes in the amount of $12,940.06, covering the period from September 1, 1933, to December 31, 1935. As provided in the enactments, the Company applied for a hearing, which was held before a representative of the comptroller and testimony taken on November 12, 1936. Decision was reserved.

On May 20, 1937, the Company filed its petition with the district court for reorganization under Bankruptcy Act § 77, 11 U.S.C.A. § 205, and the petition was approved and petitioner herein duly appointed as trustee of the debtor. Thereafter, on August 31, 1937, the comptroller determined a tax against the debtor, including penalties, of $24,995.59, wherein was included the prior assessment upon which decision had been reserved, and filed a proof of claim for that amount. Petitioner protested the assessment and applied to the comptroller for a hearing. Then he made application to the district court that the proceedings before the comptroller be stayed pending the hearing and determination by the court of the issues raised by the objections filed to the proof of claim. The court, in a reasoned opinion, In re

New York, O. & W. Ry. Co., D.C.S.D.N.Y., 25 F.Supp. 709, overruled the City's contention that it lacked jurisdiction to determine the tax, but held that the proceedings should be continued before the city authorities, without prejudice to a further application by the trustee for action by the court if that should be desirable. In its order the court directed hearings before the .comptroller or his representative on January 6, 1938. Hearings were commenced at that time, were adjourned from time to time, and were concluded on March 17, 1939. Nevertheless, the comptroller has rendered no decision.

On December 1, 1942, the trustee served a petition on the City of New York reciting these facts and asking, because of the delay in the proceedings on the part of the City, that the court proceed to a determination of the issues raised by the objections to the proof of claim in question and that the proceedings before the comptroller be stayed. The matter was heard on the trustee's petition and affidavits, with exhibits, of the trustee's counsel and a law officer of the City. The court found, "The delay in the ascertainment of liability for the utility tax claims asserted by the City has been unreasonable, and the administration of this estate requires a prompt disposition." It, therefore, granted the motion, ordered the matter referred to a special master to hear and determine the claim and report to the court with all convenient speed, and enjoined further proceedings upon the part of the City and its comptroller "in the matter of the review and determination, or either, of any of the taxes, including penalties and interest, claimed or embraced within said proof of claim, or arising by reason or in consequence thereof." The City appeals from this decision and order, claiming that the court has no jurisdiction or power itself to determine the tax.

Petitioner and the court below rely for

---

[1] The enabling statutes are Laws 1933, Ex.Sess., c. 815; Laws 1934, c. 302, and Ex.Sess., c. 873; Laws 1935, c. 601; Laws 1936, c. 414; Laws 1937, c. 327; the local laws are 1933, No. 19, p. 127; 1934, No. 10, p. 115; 1934, No. 21, published as No. 22, p. 151; 1935, No. 30, p. 157; 1936, No. 30, p. 137. Under the local law the taxes are assessed in the first instance by the city comptroller, and his determination becomes final unless the taxpayer applies to him for a hearing or he reduces the taxes of his own mo-

tion. When he makes his determination following a hearing, that determination may be reviewed by certiorari in the state courts if application is made within thirty days, the amount of the tax with penalties is deposited with the comptroller, and a bond with sureties is given to cover the payment of all costs and charges if the certiorari proceeding is unsuccessful. A typical local law, that of 1935, is quoted extensively at page 711 of 25 F.Supp.

their authority upon Bankruptcy Act § 64, sub. a, 11 U.S.C.A. § 104, sub. a, dealing with debts which have priority, wherein the grant of priority to taxes contains a proviso that "in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court." The form and place in the subdivision where this now appears come only from the Chandler Act of 1938, but earlier provisions going back to the original Bankruptcy Act contained essentially the same language. See 3 Collier on Bankruptcy, 14th Ed. 1941, §§ 64.01, 64.402. The applicability of this section to railroad reorganizations, though denied by the City, has been rested upon the provision of § 77, sub. l, 11 U.S.C.A. § 205, sub. l, that in proceedings under that section "and consistent with the provisions thereof," the bankruptcy court's jurisdiction and powers and the rights and liabilities of all persons with respect to the debtor and its property are the same as in ordinary bankruptcy. This issue and the City's further claim that under other statutes and judicial precedents a bankruptcy court cannot thus interfere with the collection of state taxes present the substantial problem of this appeal.

Though the question before us is thus purely one of bankruptcy power, we may note the variance between, even mutual recriminations of, the parties as to the reasons for the comptroller's delay in his decision. The affidavit on behalf of the City asserts that much of the delay was due to requests of the trustee's counsel for continuances during the hearing, and that decision had latterly been withheld while the parties were endeavoring to effect a compromise of all taxes due from this taxpayer, including personal property and utility taxes accrued after these proceedings began. The trustee's counsel asserts that any requests for continuance on his part were of minor character and were all before the close of the hearings in March, 1939, while the matter of the later taxes, which would be due from his operation of debtor's business and as to which he had made the assertion that he had no funds to make payment, was entirely separate and distinct from the present dispute. We refer to these issues merely to say that in any event, if power existed for the order below, we should be loath to interfere with a matter so largely a question of discretion for the bankruptcy judge;

and here there is no reason to conclude that the court was unjustified in holding the long delay of the comptroller in rendering his decision to be unreasonable. Indeed, it would seem that only unusually strong reasons could justify the failure by this late date to have decided matters fully submitted by March 17, 1939.

Prior to the decision of Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, the great majority of the decisions had upheld a wide power in the bankruptcy court to review and redetermine local taxes under § 64, sub. a, or its predecessor. These cases relied in substance upon State of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, where such a redetermination by the bankruptcy court of a New Jersey tax had been upheld. See 3 Collier, op. cit. supra, pp. 2145, 2146, and citations; and cf. Dickinson v. Riley, 8 Cir., 86 F.2d 385; In re General Film Corp., 2 Cir., 274 F. 903; In re Clayton Magazines, 2 Cir., 77 F.2d 852. There had been, however, a minority view, of which perhaps the leading examples were In re Gould Mfg. Co., D.C.E.D. Wis., 11 F.Supp. 644 (noted with approval in 45 Yale L.J. 734), and In re 168 Adams Bldg. Corp., 7 Cir., 105 F.2d 704, certiorari denied Steinbrecher v. Toman, 308 U.S. 623, 60 S.Ct. 378, 84 L.Ed. 520. See, also, 50 Yale L.J. 165, stating the arguments against restriction of the state's taxing rights in criticism of In re Missouri Pac. R. Co., D.C.E.D. Mo., 33 F.Supp. 728, which was later affirmed, Arkansas Corporation Commission v. Thompson, 8 Cir., 116 F.2d 179, but was reversed by the Supreme Court in the case first cited. There is no doubt but that the Supreme Court's decision renders many at least of the earlier cases no longer valid precedents, or that it considerably restricts interference by the bankruptcy court with state-taxing powers. When the original decision herein was rendered by the district court in 1937, 25 F.Supp. 709, it was clearly in accordance with the then weight of authority; but it is now brought in question since the Thompson case has impugned that authority.

There were two major questions before the Supreme Court in that case: first, whether § 64, sub. a, applies in railroad reorganization proceedings, and second, whether if applicable it allowed redetermination of a tax finally settled by state authorities. The first was expressly left un-

decided by the Court. In a footnote it referred to several cases bearing on this point, including the 1937 decision below in this case, as well as Finletter, The Law of Bankruptcy Reorganization, 1939, pp. 343-344. That the greater number of cases cited by the Court seemed to suggest a possible inconsistency between §§ 77 and 64, sub a, and that the Court also referred to the views of Professor Finletter, who was very definite in his conclusion that way, might suggest that the Court tended to think that the two sections were mutually inconsistent, although the lower federal courts actually passing on the point had held the other way. 3 Collier, op. cit. supra, p. 2151, n. 28; and cf. In re New York, S. & W. R. Co., D.C.N.J., 36 F. Supp. 158; In re Denver & R.G.W.R. Co., D.C. Colo., 23 F.Supp. 298; and the earlier decision herein. But this is doubtless assuming too much; all we can be sure of is that the matter is still in doubt. There is a very strong reason for assuming the applicability of this portion of § 64, sub. a, to railroad reorganizations, in addition to the fact that no definitive inconsistency appears, in the fact that in corporate reorganization proceedings it is expressly provided that this, as well as other named bankruptcy provisions, shall not apply unless bankruptcy adjudication is had. Ch. X, § 102, 11 U.S.C.A. § 502; and see, also, § 77B, sub. k, 11 U.S.C.A. § 207, sub. k. This is explicitly pointed out in several cases, as by L. Hand, J., in In re Hotel Martin Co. of Utica, 2 Cir., 114 F.2d 43, 46; and see, also, City of Springfield v. Hotel Charles Co., 1 Cir., 84 F.2d 589; In re A. V. Manning's Sons, D.C.N.J., 16 F.Supp. 932. But in our case there is nothing in the statute except the general requirement quoted above that the bankruptcy provisions should be "consistent with the provisions" of this section. And it may well be thought that there are reasons why a bankruptcy court, dealing with the reorganization of a great railroad system traversing many states, should have powers affecting local authorities which are undesirable in the usual domestic corporation whose business is being continued under the court's direction.

It should be added, however, that certain textual inconsistencies are relied on. Thus, Professor Finletter points out that § 64 (in its present form at least—the argument is less applicable to its form before the amendments of 1938, when taxes were the subject of a separate subdivision) is couched in terms directly applicable to ordinary bankruptcy in such expressions as that it refers to the debts "to have priority, in advance of the payment of dividends to creditors," etc., and that it specifically gives priority to expenses in opposition to the bankrupt's discharge and "the confirmation of an arrangement or wage-earner plan." But these are understandable in the light of the immediate purpose of the provision and do not show that the classification of claims therein set forth should be rejected in railroad reorganization. Perhaps more important is the provision of § 77, sub. b, in providing for and defining "a plan of reorganization" that "For all purposes of this section unsecured claims, which would have been entitled to priority if a receiver in equity of the property of the debtor had been appointed by a Federal court on the day of the approval of the petition, shall be entitled to such priority and the holders of such claims shall be treated as a separate class or classes of creditors," and making § 60, 11 U.S.C.A. § 96 (dealing with preferred creditors and the recovery of preferences) expressly applicable.[2] How far such provisions, and other provisions concerning the plan ultimately to be worked out, which by specific direction shall not provide for separate classification of creditors "unless there be substantial differences in priorities, claims, or interests," § 77, sub. c(7), supersede the bankruptcy priorities is not a matter we need consider here further than to suggest caution in holding the general provisions completely superseded by the inclusion of special provisions for the special case; compare remarks of L. Hand, J., in holding § 57, sub. h, 11 U.S.C.A. § 93, sub. h, for the valuation of secured claims applicable in railroad reorganizations. New York Trust Co. v. Palmer, 2 Cir., 101 F.2d 1.

Our present problem, however, is not the determination of priorities, but merely the extent of power of the bankruptcy court to decide upon tax claims. And we need only hold that we see nothing inconsistent with the power as stated in § 64, sub. a, and the provisions of § 77. Moreover, we do not see that our problem would be greatly changed, however our conclusion is expressed as to this point.

[2] Note, however, the reference in § 60, new sub. e(2), 11 U.S.C.A. § 96, sub. e(2), to § 64, sub. a, there applicable.

If there was no provision expressly dealing with the power to adjudicate tax claims, the court would still have to find that such a claim was legally due; its general power to pass upon claims would require no less. See In re 168 Adams Bldg. Corp., supra; Pepper v. Litton, 308 U.S. 295, 303, 304, 60 S.Ct. 238, 84 L.Ed. 281. Thus, § 77 itself provides that the judge "shall promptly determine" the manner in which claims of creditors "may be filed or evidenced and allowed," sub. c(7), and may refer such matters to a special master, as was done here, sub. c(13). And there seems no reason why the general bankruptcy provision as to allowance of claims by the court, § 57, sub. d, 11 U.S.C.A. § 93, sub. d, should not apply. See New York Trust Co. v. Palmer, supra; Guaranty Trust Co. of New York v. Henwood, 8 Cir., 86 F.2d 347, 108 A.L.R. 1020, certiorari denied 300 U.S. 661, 57 S.Ct. 492, 81 L.Ed. 870; In re Erie R. Co., 6 Cir., 133 F.2d 730; In re Denver & R. G. W. R. Co., D.C. Colo., 27 F.Supp. 983; Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 675-678, 55 S.Ct. 595, 79 L.Ed. 1110; cf., however, In re Chicago, M., St. P. & P. R. Co., D.C.N.D. Ill., 27 F.Supp. 685. See, also, the express provision in railroad adjustment proceedings, Ch. XV, § 738, 11 U.S.C.A. § 1238. On the other hand, the effect of the Thompson case is, in any event, to restrict the court to finding if the tax is legally due and to deny it power to review the action of a quasi-judicial taxing body in setting, after due hearing, a valuation of property for tax purposes. We conclude, therefore, that the court below did have power to decide whether the claimed tax was "legally due."

■ There still remains the major question of the extent of that power as applied to the present circumstances. And here what seem the probable limitations of the Thompson case, as ably pointed out by Professor Moore, 3 Collier, op. cit. supra, pp. 2164-2167,[3] become important. In that case the Court distinguishes the Anderson case, because in the latter the New Jersey tax assessors acted only in a ministerial capacity, while the Arkansas Commission acted in a quasi-judicial capacity and had finally settled the tax upon the participation of the trustee, who then did not take the appeal provided by the state law. Hence in the Thompson case the assessment of the tax had become res adjudicata by virtue of the state proceedings when the bankruptcy court assumed the power to consider it. Moreover, the question involved was that of valuation of the property of the railroad in the state—a matter the courts generally would not review on appeals from administrative bodies and which the Court concluded Congress did not intend should be reviewed in bankruptcy. In other words, the decision concerns a tax finally settled without appeal by the state authorities and an attack not on issues of legality, but on issues of valuation. Review in such a case involves the upsetting of state-taxing activities in ways beyond that permitted as to administrative action generally, as had been pointed out by commentators and as was held by the Supreme Court.[4]

But these factors are not present in our case. Here there had been no final or conclusive action by the comptroller. Indeed, the very reason for the proceeding is the inaction of the state-taxing authority. The only definite step so far taken has been merely a preliminary one, namely, the ex parte determination of the comptroller, which does not differ from the action of the New Jersey assessors in the Anderson

---

[3] See, also, Sullivan, Jurisdiction of the Bankruptcy Court in Tax Disputes, 29 Geo.L.J. 897, 15 J.N.A.Ref.Bankr. 135; Hunt, Bankruptcy Tax Problems, 17 J.N.A.Ref.Bankr. 121, 122; Hunt, Tax Claims in Bankruptcy Proceedings, 14 J.N.A.Ref. Bankr. 3; 55 Harv.L.Rev. 671, discussing In re Hotel Martin Co. of Utica, D.C.N.D.N.Y., 41 F.Supp. 392; 29 Va.L. Rev. 206.

[4] A third ground of difference was that the taxes in the Thompson case accrued during, and not before, reorganization. That fact makes applicable the statute cited to us by the City, but here inapplicable, 28 U.S.C.A. § 124a, that a trustee authorized to carry on a business by a United States court shall be subject to all state and local taxes applicable to such business if conducted by an individual or corporation. Of course, the contrary argument, that then it becomes an administration expense which should be fixed by the court, can be made. See discussion by Professor Moore, 3 Collier, op. cit. supra, pp. 2077-2081, 2165-6; and compare Wurzel, Taxation during Bankruptcy Liquidation, 55 Harv.L.Rev. 1141, 1149-1151, 1173-1175; City of New York v. Rassner, 2 Cir., 127 F.2d 703. But the Supreme Court did not discuss this matter.

case. Moreover, the questions here involved are questions of law. The trustee asserts that all but a trivial amount of the tax is levied on nontaxable items as follows: amounts owed the Company by its subsidiaries as interest, but unpaid because it had not paid rentals due the subsidiaries, and hence amounts resulting at most from mere bookkeeping entries in the Company's accounts, Southern Pac. Co. v. Lowe, 247 U.S. 330, 337, 338, 38 S.Ct. 540, 62 L.Ed. 1142; income from tax-exempt securities deposited with the Industrial Commissioner as security for the Company's obligations under the Workmen's Compensation Act; and demurrage receipts of the debtor, not taxable locally, since they came from interstate shipments of merchandise into New York. Also included were penalties of $4,427.77, which are improper if § 57, sub. j, applies to these proceedings—a matter upon which lower federal courts are not in accord. Compare In re Denver & R. G. W. R. Co., supra, D.C. Colo., 27 F.Supp. 983, with In re Chicago, M., St. P. & P. R. Co., supra. It would appear, therefore, that in any event these are not issues reserved to the state authorities, under the Thompson decision.

▮ If this conclusion is correct, the further objection made by the City that an injunction will not lie also falls. An amendment to § 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1), passed in 1937, provides that the district court shall not have jurisdiction to enjoin the assessment, levy, or collection of a state tax where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such state. But the statute obviously does not supersede bankruptcy law, and the power to enjoin state proceedings to safeguard proceedings in railroad reorganizations is explicitly granted by § 77, sub. j.[5] It was exercised against tax proceedings in St. Francis Levee District v. Kurn, 8 Cir., 91 F.2d 118, certiorari denied 302 U.S. 750, 58 S.Ct. 272, 82 L.Ed. 580, and St. Francis Levee District v. Kurn, 8 Cir., 98 F.2d 394, certiorari denied 305 U.S. 647, 59 S.Ct. 153, 83 L.Ed. 418, as well as in the decision below, reversed,

but not on this ground, in the Thompson case. We have had occasion recently to reaffirm the use of the injunction against the pursuit by litigants in bankruptcy of other judicial remedies interfering with the bankruptcy proceedings. See American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., 2 Cir., 136 F.2d 681, June 2, 1943, and cases there cited.

Affirmed.

---

[5] Sec. 77, sub. j, provides specifically that the judge may "enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree." The local laws in question (cf. Local Laws 1933, No. 19, § 8) provide that the docketing in the land records of a warrant issued by the comptroller makes the amount of the warrant a lien upon the debtor's real property and chattels real in the same manner as a duly docketed judgment.